Megan O'Neill (SBN 220147)
  moneill@dtolaw.com
DTO LAW
2400 Broadway, Suite 200
Redwood City, CA 94063
Telephone: (415) 630-4100
Facsimile: (415) 630-4105

William A. Delgado (SBN 222666)
  wdelgado@dtolaw.com
David Ramirez-Galvez (SBN 313544)
  dramirezgalvez@dtolaw.com
DTO LAW
601 South Figueroa Street, Suite 2130
Los Angeles, CA 90017
Telephone: (213) 335-6999
Facsimile: (213) 335-7802

Attorneys for Defendant
John Paul Mitchell Systems

*Appearances of Counsel Continued on Next Page*

### UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RANDALL HEAGNEY, RICA GUERRERO, KERRIE GONNELLA, JOHN ROHLOFF, and, JEWEL RULE, individually and on behalf of themselves and all others similarly situated,<br><br>                Plaintiffs,<br><br>    v.<br><br>JOHN PAUL MITCHELL SYSTEMS,<br><br>           Defendant. | Case No.:  3:23-cv-00687-VC<br>Hon. Vince Chhabria<br><br>**DEFENDANT JOHN PAUL MITCHELL SYSTEM'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:  July 13, 2023<br>Time:  10:00 a.m.<br>Place:  Courtroom 4 – 17th Floor,<br>       450 Golden Gate Ave.,<br>       San Francisco, CA 94102<br><br>Action Filed:  February 15, 2023 |

Martin D. Singer (SBN 78166)
  mdsinger@lavelysinger.com
LAVELY & SINGER
PROFESSIONAL CORPORATION
2049 Century Park East, Suite 2400
Los Angeles, California 90067-2906
Telephone: (310) 556-3501
Facsimile: (310) 556-3615

Attorneys for Defendant
John Paul Mitchell Systems

**TO THE COURT AND ALL PARTIES OF RECORD:**

**PLEASE TAKE NOTICE THAT** on July 13, 2023, at 10:00 a.m., or as soon thereafter as this matter may be heard, before the Honorable Vince Chhabria, in Courtroom 4 of this Court, located on the 17th Floor of the San Francisco Courthouse, 450 Golden Gate Ave., San Francisco, CA 94102, Defendant John Paul Mitchell Systems will, and hereby does, move the Court for an order granting its Motion to Dismiss the First Amended Class Action Complaint without leave to amend pursuant to Federal Rules of Civil Procedure 12(b)(1) and (b)(6) for the reasons set forth below.

The bases for this motion are more specifically set forth in the accompanying Memorandum of Points and Authorities and include:

1. Plaintiffs' false advertising claims under California law—Count II under the Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* ("CLRA"); Count III under the California False Advertising Law, Cal. Bus. & Prof. Code § 17500 ("FAL"); and Count IV under the three prongs of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 ("UCL")—fail to state a claim because (a) they have not plausibly alleged any JPMS representation is false; and (b) their allegations present a lack of substantiation challenge, which California law bars private plaintiffs from asserting.

2. Plaintiffs fail to state a claim for breach of express warranty under California law— Count I under California's Express Warranty Law, Cal. Com. Code § 2313—because (a) their claim is likewise premised on a lack of substantiation challenge; and (b) they do not plausibly allege any products they bought were tested on animals.

3. Plaintiffs are barred by the applicable statutes of limitations from asserting claims over products they bought outside the limitations period—which, in Plaintiff Kerrie Gonnella's case, outright bars all of her claims.

4. Plaintiffs lack Article III standing to request injunctive relief because they have not plausibly alleged a likelihood of future harm.

This Motion is based on this Notice, the accompanying Memorandum of Points and Authorities, the accompanying Request that the Court Consider Documents Incorporated by Reference, the pleadings and records on file, and such other matters as the Court deems necessary and proper to adjudicate this Motion.

Dated:  June 1, 2023                                DTO LAW


                                        By:  _/s/ Megan O'Neill_____
                                            Megan O'Neill
                                            Attorney for Defendant
                                            John Paul Mitchell Systems

# <u>TABLE OF CONTENTS</u>

Page

I.     INTRODUCTION ...................................................................................................1

II.    STATEMENT OF ISSUES TO BE DECIDED ....................................................2

III.   FACTUAL BACKGROUND .................................................................................2

IV.    ARGUMENT ..........................................................................................................4

      A.     The UCL Fraud/Deception Prong, FAL, and CLRA Claims Fail Because
             They Fall Short of the Requirements of *Twombly/Iqbal* and *King Bio* ...............4

            1.     Plaintiffs' claims are improperly based on the mere possibility of
                  liability ..............................................................................................4

            2.     Even if Plaintiffs could satisfy *Twombly/Iqbal*, they have failed to
                  satisfy the requirements of *King Bio* ...............................................7

      B.     The UCL Unfair Prong Claim Fails Because It Fully Overlaps with
             Plaintiffs' Deficient Claims Under The FAL, CLRA, and Other UCL
             Prongs ....................................................................................................9

      C.     The Express Warranty Claim Fails Because Plaintiffs Fail to Establish
             JPMS Breached Its "No Animal Testing" Promise as to Their Products ..........10

      D.     Plaintiffs' UCL Unlawful Prong Claim Fails Because Plaintiffs Do Not
             Sufficiently Allege a Violation of a Predicate Cause of Action .......................12

      E.     Plaintiffs' Claims, to the Extent They Survive the Pleading Stage, Cannot
             Be Based on Purchases Outside the Applicable Statute of Limitations
             Period ....................................................................................................12

            1.     Plaintiffs are barred from asserting claims over purchases outside
                  the applicable limitations periods ........................................................12

            2.     Plaintiff Gonnella's claims are wholly barred because she does not
                  allege a purchase within the applicable limitations periods...................14

      F.     Because Plaintiffs Now Believe JPMS Tests on Animals, They Are Not
             Entitled to Injunctive Relief...............................................................14

V.     CONCLUSION ......................................................................................................15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allen v. Similasan Corp.*,
   96 F. Supp. 3d 1063 (S.D. Cal. 2015) ........................................................................14

*Allred v. Frito-Lay N. Am., Inc.*,
   2019 WL 1040018 (S.D. Cal. Mar. 5, 2019) ...............................................................14

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .................................................................................................5, 7

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) .............................................................................................4, 5, 7

*Cimoli v. Alacer Corp.*,
   546 F. Supp. 3d 897 (N.D. Cal. 2021) ........................................................................15

*Dam v. Hodges*,
   2019 WL 988682 (C.D. Cal. Jan. 9, 2019) .................................................................15

*Daugherty v. Am. Honda Motor Co.*,
   144 Cal. App. 4th 824 (2006) .....................................................................................11

*Davidson v. Kimberly-Clark Corp.*,
   889 F.3d 956 (9th Cir. 2018) ......................................................................................15

*Ebner v. Fresh, Inc.*,
   838 F.3d 958 (9th Cir. 2016) ......................................................................................15

*Engel v. Novex Biotech, LLC*,
   689 Fed. Appx. 510 (9th Cir. Apr. 21, 2017) ...............................................................9

*Ferranti v. Hewlett-Packard Co.*,
   2015 WL 5302674 (N.D. Cal. Sept. 10, 2015) ...........................................................12

*Franz v. Beiersdorf, Inc.*,
   2015 WL 4659104 (S.D. Cal. Aug. 5, 2015) ................................................................9

*Hadley v. Kellogg Sales Co.*,
   243 F. Supp. 3d 1074 (N.D. Cal. 2017). ...............................................................10, 11

*Harris v. Home Depot U.S.A., Inc.*,
   2016 WL 8114188 (N.D. Cal. Jan. 20, 2016) .............................................................12

*Hodgers-Durgin v. de la Vina*,
   199 F.3d 1037 (9th Cir. 1999) ....................................................................................15

*Joslin v. Clif Bar & Co.*,
   2019 WL 5690632 (N.D. Cal. Aug. 26, 2019) ............................................................15

DEFENDANT JPMS'S MOTION TO DISMISS FAC
241388

*Keith v. Buchanan*,
 173 Cal. App. 3d 13 (1985) ................................................................................11

*Kwan v. SanMedica Int'l*,
 854 F.3d 1088 (9th Cir. 2017) ......................................................................7, 9, 10

*Locklin v. StriVectin Operating Co., Inc.*,
 2022 WL 867248 (N.D. Cal. Mar. 23, 2022)...........................................................8

*Marshall v. PH Beauty Labs, Inc.*,
 2015 WL 3407906 (C.D. Cal. May 27, 2015) ...........................................12, 13, 14

*Myers v. Starbucks Corp.*,
 2020 WL 13302437 (C.D. Cal. Jul. 29, 2020)..........................................................9

*Nat'l Council Against Health Fraud, Inc. v. King Bio Pharms., Inc.*,
 107 Cal. App. 4th 1336 (2003) ...........................................................................4, 7

*NBCUniversal Media, LLC v. Superior Court*,
 225 Cal. App. 4th 1222 (2014) ............................................................................13

*Norgart v. Upjohn Co.*,
 21 Cal. 4th 383 (1999) .........................................................................................13

*Perez v. Bath & Body Works, LLC*,
 2022 WL 2756670 (N.D. Cal. July 14, 2022)..........................................................8

*Prescott v. Nestlé USA, Inc.*,
 2022 WL 1062050 (N.D. Cal. Apr. 8, 2022)..........................................................15

*Sidhu v. Bayer Healthcare Pharms. Inc.*,
 2022 WL 17170159 (N.D. Cal. Nov. 22, 2022)......................................................12

*Tubbs v. AdvoCare Int'l, LP*,
 2017 WL 4022397 (C.D. Cal. Sept. 12, 2017) .......................................................10

*Weiss v. Trader Joe's Co.*,
 2018 WL 6340758 (C.D. Cal. Nov. 20, 2018)..........................................................8

*Williams v. Beechnut Nutrition Corp.*,
 185 Cal. App. 3d 135 (1986) ................................................................................10

## Statutes

Cal. Bus. & Prof. Code § 17200 ........................................................ *passim*

Cal. Bus. & Prof. Code § 17500 ........................................................ *passim*

Cal. Civ. Code § 1770 ....................................................................... *passim*

Cal. Com. Code § 2313....................................................................... *passim*

DEFENDANT JPMS'S MOTION TO DISMISS FAC
241388

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiffs accuse John Paul Mitchell Systems ("JPMS"), a company founded 43 years ago on the principle of "cruelty-free" hair care products, of harboring a decades-long lie—namely, that JPMS has secretly been testing on animals all along. But what do Plaintiffs offer in support of such an inflammatory charge? Rank speculation. Nowhere in the FAC do they allege *any* specific facts showing JPMS has ever tested its products on animals *anywhere* in the world.

Plaintiffs base their claims on an attenuated series of inferences: That because (1) China's official regulations required foreign companies importing cosmetic products for sale in China to test their products on animals and (2) JPMS sold products in China, JPMS necessarily must have tested its products on animals. But pleading supposition is not the same as pleading falsity. Not only do Plaintiffs' allegations fail to meet the "plausibility" standard under *Twombly/Iqbal*, their claims also run headfirst into longstanding California law barring private plaintiffs from pursuing claims amounting to a demand for substantiation of label claims. If there is one thing that's clear from the FAC, it is that Plaintiffs have *not* found any proof JPMS ever tested its products on animals. As a result, Plaintiffs ask this Court to relieve them of their obligation to prove JPMS's "no animal testing" representation is false and, instead, require JPMS to come forward with evidence it is *true*. Such allegations present a textbook "lack of substantiation" challenge, which California law prohibits. Plaintiffs' UCL, FAL, and CLRA claims must therefore fail.

Plaintiffs' express warranty claim fails for the same reasons: Because Plaintiffs do not allege specific facts indicating JPMS ever broke its "no animal testing" promise, they fail to establish a breach by JPMS. And, even if the Court were to credit Plaintiffs' conjecture, this claim would nevertheless fail because Plaintiffs do not sufficiently allege JPMS broke its "no animal testing" promise as to the specific products they bought. This is because express warranty law singularly focuses on whether the actual product bought conforms to the specific representations made ***about that product***. And no Plaintiff purports to have bought JPMS products in (or from) China, nor do Plaintiffs adequately plead a connection between the

Chinese-sold JPMS products and their U.S.-bought JPMS products.

Even if the Court were to accept Plaintiffs' speculative theory of liability, their claims would be limited in two ways. *First*, to the extent they survive the pleadings stage, Plaintiffs' claims must be limited to purchases within the limitations period—which outright bars Plaintiff Gonnella's claims given she last bought JPMS products in 2018. *Second*, Plaintiffs lack Article III standing to pursue injunctive relief because they profess no confusion over their (mistaken) belief JPMS permitted animal testing in China and, thus, face no likelihood of future harm.

For the foregoing reasons, the Court should grant JPMS's motion in its entirety.

## II.    STATEMENT OF ISSUES TO BE DECIDED

1.      Whether Counts I–IV fail as a matter of law given Plaintiffs' theory of falsity is implausible and/or constitutes an impermissible "lack of substantiation" challenge.

2.      Whether Count I separately fails because Plaintiffs do not sufficiently allege JPMS breached an express warranty vis-à-vis the specific products Plaintiffs bought.

3.      Whether Plaintiffs are barred from asserting Counts I–IV, to the extent they survive, for purchases outside the respective statutes of limitations.

4.      Whether Plaintiffs lack Article III standing to claim injunctive relief.

## III.    FACTUAL BACKGROUND

**Alleged Misrepresentations**. Plaintiffs' claims center on JPMS's "no animal testing" representation. FAC ¶ 3. This representation allegedly appears—in one form or another—across all JPMS products and is a company-wide promise. *See* FAC ¶¶ 4–5 (noting the variations of this representation); FAC ¶¶ 48–74 (same and including examples of representation).

Plaintiffs allege *zero* specific facts showing JPMS tested on animals. Instead, they base their lawsuit on an inference drawn from an official Chinese regulation and a perfunctory investigation. Specifically, prior to 2021, China's official regulations allegedly required foreign companies importing cosmetic products for sale in China to register them with China's National Medical Products Association ("NMPA"). FAC ¶¶ 119–139. These regulations purportedly required each NMPA application to be supported by a testing report for each product, which was

to be prepared by a NMPA-designated facility in China. *Id.* The regulations allegedly further required the testing reports to include select tests done on animals. FAC ¶¶ 123, 129, 137. Plaintiffs allege JPMS registered certain cosmetic products with the NMPA from 2001–2021. *See* FAC ¶¶ 154, 178. From these allegations, Plaintiffs posit JPMS necessarily must have tested those JPMS products on animals. FAC ¶¶ 153–156, 178–184.

**Pre-Suit Substantiation Inquiries**. Prior to filing suit, Plaintiffs sought to corroborate their supposition by asking the NMPA whether JPMS was ever granted any exemptions from animal testing, and the NMPA allegedly said no. FAC ¶ 200. Plaintiffs made a similar inquiry to JPMS in connection with their pre-filing CLRA letter. FAC ¶ 201. In response, JPMS provided Plaintiffs with documents showing its work with the Beijing Institute for Drug Control ("BIDC") to develop suitable alternatives to animal testing and to submit the results from those tests to the SFDA (a predecessor to the NMPA). FAC ¶¶ 203–209. Plaintiffs allege those documents do not "show that JPMS eventually obtained an exemption from the NMPA," claiming, "[a]t best," "they show that JPMS was exploring alternative testing methods while obtaining registrations through the normal channels." FAC ¶ 210. However, Plaintiffs conveniently omit that the JPMS documents further indicate JPMS *did* ultimately obtain an exemption, but political pressure from the Chinese government required the exemption to go undocumented and remain hidden. *See* Declaration of Megan O'Neill ISO Request to Consider ("O'Neill Decl."), Ex. A, at 47–49.

**Plaintiffs' Purchases**. Plaintiffs claim to have bought JPMS products over the years:

| Plaintiff | State | Products Purchased and What Years |
|---|---|---|
| Heagney | California | Customer since late 1980s; last bought Awapuhi Conditioner in 2014–2015 and Awapuhi Shampoo through 2020. FAC ¶¶ 10, 223, 228. |
| Guerrero | Texas | Customer since 2008; last bought Clean Beauty Anti-Frizz Shampoo and SUPER SKINNY Serum in 2022. FAC ¶¶ 11, 234, 247. |
| Gonnella | Virginia | Customer since 2016; last bought Tea Tree Special Shampoo and Lemon Sage Thickening Shampoo/Conditioner **in 2018**. FAC ¶¶ 12, 256, 261. |
| Rohloff | Oklahoma | Customer since 2004; last bought Awapuhi Moisture Mist, Soft Style Soft Sculpting Spray Gel, and Paul Mitchell Conditioner in 2021. FAC ¶¶ 13, 266, 267. |
| Rule | Oklahoma | Customer for 15 years; last bought, among other JPMS products, Tea |

| | | Tree Special Shampoo and Color Conditioner between 2018 and 2022. FAC ¶¶ 14, 280, 290-291. |
| --- | --- | --- |

All Plaintiffs allege the products they purchased state either "no animal testing" or "cruelty free" on the bottle (FAC ¶ 226 (Heagney); ¶¶ 241, 248 (Guerrero); ¶¶ 262–263 (Gonnella); ¶ 270 (Rohloff); ¶ 292 (Rule)) and that because "JPMS obtained NMPA approval for the [Products] in China . . . those products were tested on animals in a Chinese lab" (FAC ¶ 229 (Heagney); ¶ 249 (Guerrero); ¶ 264 (Gonnella); ¶ 278 (Rohloff); ¶ 293 (Rule)). Plaintiffs further allege they understood the "no animal testing" and "cruelty free" representations to mean JPMS never tests on animals anywhere in the development or manufacturing of its products, whether in the U.S. or elsewhere in the world. *See* FAC ¶ 43; *see also id.* ¶ 270 (Rohloff).

**Claims Alleged**. Based on the above allegations, Plaintiffs assert claims under Cal. Com. Code § 2313 (express warranty); the Consumer Legal Remedies Act, Cal. Civ. Code § 1770 ("CLRA"); the California False Advertising Law, Cal. Bus. & Prof. Code § 17500 ("FAL"); and all three prongs of the California Unfair Competition Law, *id.* § 17200 ("UCL").

## IV.   ARGUMENT

### A.   The UCL Fraud/Deception Prong, FAL, and CLRA Claims Fail Because They Fall Short of the Requirements of *Twombly/Iqbal* and *King Bio*.

#### 1.   *Plaintiffs' claims are improperly based on the mere possibility of liability.*

As noted, Plaintiffs' theory of liability rests on sheer supposition—that because (1) China's official regulations previously required imported cosmetics products to be registered with the NMPA and, as part of that process, tested on animals (FAC ¶¶ 121–139); and (2) JPMS registered select imported cosmetic products with the NMPA during that time (FAC ¶¶ 154, 178), JPMS *must have* tested its cosmetic products on animals (FAC ¶¶ 156, 184).

But supposition alone does not establish "plausibility." As the Supreme Court has explained: "Factual allegations must be enough to raise a right to relief *above the speculative level.*" *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (emphasis added). Plaintiffs' supposition certainly raises a *possibility* that JPMS permitted animal testing so it could register its products for sale in China, but the plausibility standard "asks for more than a sheer possibility

that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Where, as here, the FAC "pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*

Conspicuously missing from the FAC are specific factual allegations indicating JPMS did in fact test its products on animals to secure NMPA approvals—the fact needed to "nudge[] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Instead, Plaintiffs simply ask the Court to *assume* that key fact.

A simple analogy reveals the folly of such an approach. Say an eco-friendly zoning law requires all homes built after 2020 to have low-flow shower heads. A developer has just built a tract of new homes, which it represents as having standard, high-pressure shower heads. Can we assume, from the zoning law alone, the developer is falsely advertising its homes? And could a plaintiff sue the developer on that basis alone?  The answer is plainly no. The only thing that is certain is what the zoning law requires. Everything else is sheer speculation—which under *Iqbal* and *Twombly* is an insufficient basis to state a claim.

Plaintiffs attempt to corroborate their supposition by alleging that, when they asked the NMPA whether JPMS was ever granted an exemption from animal testing, the NMPA said no. FAC ¶ 200. But this simply reaffirms that Plaintiffs are not aware of any specific facts indicating JPMS tested its products on animals. Indeed, there are numerous other, equally plausible explanations that render the NMPA's denial inconsistent with liability. Maybe the NMPA, a ministerial agency of China's Communist Party, has a policy against disclosing information to private citizens, especially those of the United States. Perhaps the NMPA is fearful it would lose face if such an exemption were confirmed because it told *other* companies no such exemption was available. Maybe the NMPA no longer maintains records from nearly a decade ago, or the customer service representative was not authorized to provide that information, or was not able to locate it. Or perhaps something was merely lost in translation—that JPMS has no *current* exemption, which says nothing about whether it had one during the relevant time period.

Nor is it without precedent for China to make an (unacknowledged) exception in a high-profile matter. Recently, U.S.-born Olympic skier Eileen Gu represented China in the 2022 Beijing Olympics. This is despite the fact that China does not recognize dual citizenship/nationality. And, as reported by various news outlets, there is no record of Ms. Gu ever foregoing her U.S. citizenship/nationality and both the Chinese government and Ms. Gu have been either silent or vague in response to direct questions on this matter.[1]

The FAC's other allegations further amplify the *implausibility* of Plaintiff's theory. Specifically, the FAC highlights that: (i) "a key component of JPMS's brand was that JPMS's products were cruelty free" (FAC ¶ 48); (ii) "[t]hroughout its history, JPMS committed to never perform animal testing and included that commitment on its advertising, on its website, and on its products" (FAC ¶ 49); (iii) after becoming aware China required animal testing to register products in China, JPMS announced it would leave the Chinese market until it found a work-around (FAC ¶¶ 157-161); (iv) JPMS worked with the BIDC, at great expense to JPMS, to develop suitable alternatives to animal testing, to perform those tests on JPMS products, and to submit the resulting data to the SFDA (FAC ¶¶ 203-210); and (v) following those efforts, JPMS represented to the world that it had obtained an exemption to sell products in China without having to test on animals[2] (FAC ¶¶ 194-197). The pre-suit materials JPMS provided to Plaintiffs—which the FAC incorporates by reference—further evince JPMS succeeded in obtaining an exemption, which, for political reasons, could not be formally documented and instead had to be hidden from the public. *See* O'Neill Decl., Ex. A, at 47–49.

In sum, Plaintiffs' theory rests on the most *implausible* of ideas: That despite building a

---

[1]   *See* Julien Pretot, *Freestyle skiing-China's golden Gu dodgers U.S. passport question*, REUTERS, Feb. 8. 2022, https://www.reuters.com/lifestyle/sports/freestyle-skiing-golden-girl-gu-sidesteps-citizenship-question-2022-02-08/; Jack Lau, *Winter Olympics: why has Eileen Gu's 'Chineseness' sparked a raging debate on nationality and allegiance to China and US?*, S. CHINA MORNING POST (Feb. 20, 2022), https://www.scmp.com/sport/china/article/3167702/winter-olympics-why-has-eileen-gus-chineseness-sparked-raging-debate.

[2]   According to the FAC, JPMS made this bold proclamation, FAC ¶¶ 194-197, yet the Chinese government stayed silent even though the proclamation—if untrue—would have represented a slap in the face to Chinese sovereignty.

sterling reputation for 40+ years on a singular commitment *against* animal testing, leaving the Chinese market and thus losing sales for some time because it refused to test on animals,[3] and working with the BIDC (at considerable cost, time, and effort) to develop suitable alternatives to animal testing towards securing an exemption, JPMS was, in fact, cavalier and willing to sacrifice its goodwill across the world by lying about its commitment and adherence to its values. And, according to Plaintiffs, JPMS did all of that just so that it could sell a small subset of its vast product line in a country where such sales might not pan out. If this theory of liability sounds difficult to believe, that's because it is. The Court should therefore reject it. *See Iqbal*, 556 U.S. at 679 (noting "whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and *common sense*.") (emphasis added).

Plaintiffs' claims run headfirst into a number of other obstacles as discussed below. But the Court need not reach those because Plaintiffs cannot clear the first one. Sheer speculation is insufficient to open the doors to expensive classwide discovery. *Twombly*, 550 U.S. at 558-59.

2.      *Even if Plaintiffs could satisfy* Twombly/Iqbal, *they have failed to satisfy the requirements of* King Bio.

Even if Plaintiffs' claims meet the "plausibility" standard under *Twombly/Iqbal*, they nevertheless fail under California law, which has long held private plaintiffs cannot state a false advertising claim merely by insisting there is no evidence to support a challenged representation. *See Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1096–97 (9th Cir. 2017) ("California law does not provide a private cause of action for claims that advertising lacks substantiation."); *see also Nat'l Council Against Health Fraud, Inc. v. King Bio Pharms.*, *Inc.,* 107 Cal. App. 4th 1336, 1348 (2003). Instead, private plaintiffs must allege *specific facts* showing the defendant's representations are *actually false. See Kwan*, 854 F.3d at 1097 ("[T]he failure to allege specific facts pointing to actual falsehood constitutes a fatal flaw."). "Without such [falsity] allegations,

---

[3]    Plaintiffs take issue with the characterization that JPMS "left" the Chinese market, preferring to call it a two-year "pause." FAC ¶ 190. Whatever one calls it, the immutable fact remains: JPMS opted to forego sales for two years rather than submit to animal testing.

the claim collapses into a 'lack of substantiation' claim that private litigants may not bring under California law." *Perez v. Bath & Body Works, LLC*, 2022 WL 2756670, at *3 (N.D. Cal. July 14, 2022). "Courts must therefore parse complaints brought by private litigants to ensure that they allege actual falsity." *Locklin v. StriVectin Operating Co.*, 2022 WL 867248, at *4 (N.D. Cal. Mar. 23, 2022) (Chhabria, J.).

As set forth above, Plaintiffs do not specifically plead *any* facts establishing falsity. They do not, for example, cite to specific test reports, knowledgeable persons, or third-party articles indicating JPMS, in fact, tested products on animals in China.[4] Indeed, Plaintiffs don't even allege being aware of the existence of any such reports, persons, or articles. To the contrary, the only articles and reports cited in the FAC indicate JPMS did *not* test on animals, including in China. *See, e.g.,* FAC, n. 3–8, 43. Likewise, the only specific factual allegations about JPMS's testing activity in China cited in the FAC are those noting JPMS worked with the BIDC to develop *suitable alternatives to animal testing*. *See, e.g.,* FAC ¶¶ 202–210. Ultimately, Plaintiffs have come to court with an inferential supposition that effectively shifts the burden of proof. Plaintiffs no longer have to prove JPMS's "no animal testing" representation is *false*; JPMS must now come forward with evidence it is *true*. Such allegations present a textbook lack of substantiation challenge. *See, e.g., Weiss v. Trader Joe's Co.*, 2018 WL 6340758, at *3 (C.D. Cal. Nov. 20, 2018)*, aff'd sub nom. Weiss v. Trader Joe's*, 838 F. App'x 302 (9th Cir. 2021) ("A lack-of-substantiation claim challenges a defendant's alleged failure to substantiate representations it makes about its product.").

Plaintiffs' reliance on their professed inability to find evidence JPMS got an exemption from animal testing in China—via their inquiries to the NMPA and JPMS[5]—is a tell-tale sign of

---

[4]   Plaintiffs allege "[t]he NMPA's approvals of JPMS's registrations reference JPMS's compliance with [the 2007 and 2015 Hygienic Standards for cosmetics]," and include two samples as Exhibits 6 and 7. FAC ¶ 188. However, Plaintiffs grossly overstate what the NMPA approvals *actually* state. As is evident on their face, the NMPA approvals only allude to the standards in connection with microbiological and physicochemical tests, **not animal tests**.

[5]   Plaintiffs' insistence that JPMS "has no documentation or record of th[e] exemption" is belied by the materials JPMS provided to Plaintiffs in connection with their pre-filing CLRA letter inquiry. *See* O'Neill Decl., Ex. A, at 47–49.

a lack of substantiation challenge. As the Ninth Circuit has remarked: "[A]llegations that . . . a comprehensive search could not produce any publication to support claims do not support a finding that the advertising claims are actually false, only that they lack substantiation." *Engel v. Novex Biotech, LLC*, 689 Fed. Appx. 510, 510–11 (9th Cir. Apr. 21, 2017). Thus, "[i]t remains [Plaintiffs'] burden to allege facts sufficient to demonstrate [JPMS's] statements are false or misleading, and [they] can't shift [their] burden by merely alleging [they] can't find substantiation." *Franz v. Beiersdorf, Inc.*, 2015 WL 4659104 at *3 (S.D. Cal. Aug. 5, 2015).

*Myers v. Starbucks Corp*., 2020 WL 13302437 (C.D. Cal. Jul. 29, 2020), is instructive. There, the plaintiffs challenged representations by Mars and Starbucks regarding their cocoa sourcing for specific products—that Mars "buy[s] cocoa from Rainforest Alliance Certified™ farms, traceable from the farms into our factory" and that Starbucks's hot cocoa is "[m]ade with Ethically Sourced Cocoa." *Id.* at *2. The plaintiffs sought to prove these statements were false by pointing to allegations generally establishing the Ivory Coast (1) suffers from widespread child labor and (2) produces cocoa in a manner that renders traceability virtually impossible. *Id.* at *1, *5–6. The plaintiffs argued that because Mars and Starbucks source cocoa from the Ivory Coast, their cocoa sourcing representations must be false. *Id.* The court rejected the argument as a thinly-veiled lack of substantiation challenge, noting that by virtue of being "generalized" and "conclusory," the allegations "impermissibly shift the burden to Mars [and Starbucks] to substantiate [their] labels." *Id.* at *5–6 (citing *Kwan*, 854 F.3d at 1096); *see also Kwan*, 854 F.3d at 1096 (dismissing conclusory allegations as "do[ing] nothing to support or prove the falsehood of the claims"). Just as in *Myers*, Plaintiffs' generalized allegations, coupled with their *ipso facto* logic, impermissibly shift the burden to JPMS to prove the truth of their advertising.

For these reasons, California law bars Plaintiffs from asserting their lack of substantiation claims under the CLRA, FAL, and UCL fraud/deception prong.

**B.    The UCL Unfair Prong Claim Fails Because It Fully Overlaps with Plaintiffs' Deficient Claims Under The FAL, CLRA, and Other UCL Prongs.**

The foregoing analysis also dooms Plaintiffs' UCL unfair prong claims because Plaintiffs

base them on the *same* allegations as their misrepresentation claims under the fraud/deception prong of the UCL, FAL, and CLRA. *See* FAC ¶ 340 (describing JPMS's "unfair conduct" as falsely representing to consumers that products are not tested on animals). And "courts in this district have held that where the unfair business practices alleged under the unfair prong of the UCL overlap entirely with the business practices addressed in the fraudulent and unlawful prongs of the UCL [as well as under the FAL and CLRA], the unfair prong of the UCL cannot survive if the claims under the other [claims] do not survive." *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1104–05 (N.D. Cal. 2017).

### C. The Express Warranty Claim Fails Because Plaintiffs Fail to Establish JPMS Breached Its "No Animal Testing" Promise as to Their Products.

To properly plead an express warranty claim under California law, Plaintiffs must allege "a breach of th[e] warranty which proximately causes [them] injury." *Hadley*, 243 F. Supp. 3d at 1105 (quoting *Williams v. Beechnut Nutrition Corp.*, 185 Cal. App. 3d 135, 142 (1986)). Plaintiffs base their express warranty claim on the same theory as their misrepresentation claims—i.e., because JPMS sells products in China, it must have breached its "no animal testing" promise. FAC ¶¶ 303–309. This claim similarly fails.

*First,* the express warranty claim should be dismissed because it is subject to the same lack of substantiation bar as the false advertising claims: Private plaintiffs cannot shift the burden of proof and demand that a manufacturer substantiate its claims. Instead, they need to allege specific facts showing the express promise was untrue. *See, e.g., Tubbs v. AdvoCare Int'l, LP*, 2017 WL 4022397, at *5–6 (C.D. Cal. Sept. 12, 2017) (dismissing express warranty claim premised on lack of substantiation, noting "courts have applied *Kwan*'s holding to all causes of actions premised on a lack-of-substantiation theory, not only those claims raised in *Kwan*").

*Second*, even if the Court accepts Plaintiffs' speculative falsity theory, it does not establish a breach as to any of the products Plaintiffs *actually* bought—whether the specific products or the product line/variant. This is critical because an express warranty is "contractual" in nature and, as such, focuses on whether the specific product bought "conform[s] to the

[specific] promise [made]." *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 830

(2006), *as modified* (Nov. 8, 2006). As the California Court of Appeal explains:

> A warranty relates to the title, character, quality, identity, or condition of the goods. ***The purpose of the law of warranty is to determine what it is that the seller has in essence agreed to sell.*** Express warranties are chisels in the hands of buyers and sellers. With these tools, the parties to a sale sculpt a monument representing the goods. Having selected a stone, the buyer and seller may leave it almost bare, allowing considerable play in the qualities that fit its contours. Or the parties may chisel away inexactitudes until a well-defined shape emerges. ***The seller is bound to deliver, and the buyer to accept, goods that match the sculpted form.***

*Keith v. Buchanan*, 173 Cal. App. 3d 13, 20–21 (1985) (emphasis added). Thus, a breach occurs

*only if* the specific product the plaintiff bought does not conform to the specific promise the

defendant made. *Daugherty*, 144 Cal. App. 4th at 830 ("If the [goods] do not [conform to the

promise], the buyer is entitled to recover the difference between the value of the goods accepted

by the buyer and the value of the goods had they been as warranted.").

Plaintiffs' theory of breach does not establish JPMS breached its "no animal testing"

promise in connection with, for example, the bottle of Awapuhi Shampoo Mr. Heagney bought

in 2020 in Stockton, California. Plaintiffs' theory *only* alleges JPMS permitted animal testing by

NMPA-designated test facilities in China on select products registered for sale in China. *See*

FAC ¶¶ 121–126, 156, 184, 229, Exs. 4 and 5. Plaintiffs do not allege they bought JPMS

products in China or that any such products were shipped back for sale in the U.S. And the lone,

specious connection Plaintiffs make between the JPMS products they bought in the U.S. and the

JPMS products registered in China is noting they share the same name—i.e., the "Awapuhi

Shampoo." But there are no allegations the products share the same ingredients or were part of

the same development lot, such that this Court can conclude the for-sale-in-China Awapuhi

Shampoo is the same as the Awapuhi Shampoo Mr. Heagney bought in Stockton, California.

For these reasons, Plaintiffs fail to state an express warranty claim. *See Hadley*, 243 F.

Supp. 3d at 1105–06 (dismissing express warranty claim premised on "a litany of statements,

undifferentiated by product variant" because "an express warranty claim requires that the

statements be part of the 'basis of the bargain,' and the 'basis of the bargain' for each product

would only include the statements made on the packaging for that specific product variant").

> **D. Plaintiffs' UCL Unlawful Prong Claim Fails Because Plaintiffs Do Not Sufficiently Allege a Violation of a Predicate Cause of Action.**

Because Plaintiffs fail to state a claim for express warranty or under the UCL's fraud or unfair prong, the FAL, or the CLRA, *see* Sections IV.A–C, *supra*, the Court also must dismiss their UCL unlawful claim, which depends on "violations of [those] other causes of actions." *Sidhu v. Bayer Healthcare Pharms. Inc.*, 2022 WL 17170159, at *8 (N.D. Cal. Nov. 22, 2022).

> **E. Plaintiffs' Claims, to the Extent They Survive the Pleading Stage, Cannot Be Based on Purchases Outside the Applicable Statute of Limitations Period.**

The applicable statutes of limitations bar Plaintiffs' claims to the extent they are based on purchases outside the limitations period. And, as to Plaintiff Gonnella—who does not allege a purchase within the limitations period at all—the statutes bar her claims altogether.

> 1. *Plaintiffs are barred from asserting claims over purchases outside the applicable limitations periods.*

The statutes of limitations governing Plaintiffs' claims are as follows: 3 years for the FAL and CLRA and 4 years for the UCL and express warranty. *See Marshall v. PH Beauty Labs, Inc.*, 2015 WL 3407906, at *2 (C.D. Cal. May 27, 2015) (FAL and CLRA); *Harris v. Home Depot U.S.A., Inc.*, 2016 WL 8114188, at *1 (N.D. Cal. Jan. 20, 2016) (UCL); *Ferranti v. Hewlett-Packard Co.*, 2015 WL 5302674, at *8 (N.D. Cal. Sept. 10, 2015) (express warranty).

Plaintiffs nevertheless set the start date for the putative class as May 1, 2015, purporting to assert claims over products purchased outside the longest applicable limitations period. Each Plaintiff also alleges they first purchased JPMS products long before February 15, 2019—four years prior to the filing of this action. *See, e.g.,* FAC ¶ 223 (Heagney since the late 1980s); ¶ 234 (Guerrero since 2008). Regardless of these allegations and despite the class definition, Plaintiffs' claims must be limited to products purchased on or after February 15, 2019.

To the extent Plaintiffs argue the Court should extend the statutes of limitations here, that argument will fail given there are no allegations justifying tolling. To start, the continuing violation doctrine does not apply because Plaintiffs' claims do not depend on "a series of small

harms, any one of which may not be actionable of its own." *Marshall*, 2015 WL 3407906, at *2

(quoting *NBCUniversal Media, LLC v. Superior Court*, 225 Cal. App. 4th 1222, 1237 n. 10

(2014)). Rather, under Plaintiffs' theory, each purchase of a JPMS product would independently

give rise to false advertising and express warranty claims. *See id.* (noting that "although Plaintiff

purchased Defendant's product up to five times, it is unclear to the court why [the first alleged

deficiency] would only be actionable in conjunction with subsequent failures").

      Next, the delayed discovery rule is inapt because Plaintiffs do not sufficiently plead facts

establishing "(1) the time and manner of discovery and (2) the inability to have made earlier

discovery despite reasonable diligence." *Marshall*, 2015 WL 3407906, at *2. Each Plaintiff

simply alleges they first discovered "JPMS was testing on animals in China [when] he [or she]

contacted undersigned counsel"—all in 2022. *See, e.g.,* FAC ¶ 212 (Heagney); ¶ 249 (Rohlhoff).

That is not enough to establish Plaintiffs were reasonably diligent. *See Marshall*, 2015 WL

3407906, at *3 (concluding plaintiff's allegations "that she discovered the cause of action in May

2014 after speaking with her counsel" and "could not have discovered [d]efendant's 'deceptive

practices' earlier because she is not a skincare expert" were insufficient to show "[p]laintiff was

reasonably diligent") (citing *Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 397 (1999)).

      That is especially true here, given Plaintiffs base their claims entirely on information that

has been publicly available for more than a decade and capable of discovery through internet

searches, including China's animal testing requirement and JPMS's sale of products in China.

*See* FAC ¶¶ 113–144, 153–187. By way of example, Plaintiffs allege that "[i]n 2012, PETA

exposed multiple [other] cosmetic companies, both in the United States and Europe, that claimed

to be cruelty free but had been selling products in China and undergoing animal testing." FAC ¶

157. The 2012 PETA press release Plaintiffs cite praising JPMS's decision to pull out of China

because of its animal testing requirement, in turn, shows PETA separately inquired with Mary

Kay, Avon, and Estée Lauder about animal testing—all based on their presence in China and

China's animal testing requirement. FAC ¶ 159. A simple online search years ago, therefore,

would have turned up the facts Plaintiffs now claim establish JPMS is liable—that China

requires animal testing and that JPMS sold in China.[6]

Lastly, the "continuous accrual" doctrine does not permit Plaintiffs to assert claims over purchases outside the limitations period. As multiple courts have held, a plaintiff who claims to have bought falsely-labeled products both within and beyond the limitations period, as Plaintiffs do here, can only assert claims as to the purchases within the limitations period. *See, e.g., Allred v. Frito-Lay N. Am., Inc.*, 2019 WL 1040018, at *7 (S.D. Cal. Mar. 5, 2019) (noting "the continuous accrual doctrine supports recovery only for damages arising from those breaches falling within the limitations period" and, on that basis, holding "Plaintiff's CLRA and FAL claims based on purchases prior to May 11, 2014, and their breach of warranty and UCL claims based on purchases prior to May 11, 2013, are time-barred"); *Allen v. Similasan Corp.*, 96 F. Supp. 3d 1063, 1071 (S.D. Cal. 2015) (same).

Accordingly, to the extent they survive the *Twombly*/*King Bio* challenge, the Court must limit Plaintiffs' CLRA and FAL claims to purchases after February 15, 2020, and Plaintiffs' UCL and express warranty claims to purchases after February 15, 2019.

> 2. *Plaintiff Gonnella's claims are wholly barred because she does not allege a purchase within the applicable limitations periods.*

Unlike the other Plaintiffs (each of whom alleges a purchase after February 2019), Plaintiff Gonnella admits she last bought JPMS products in 2018. *See* FAC ¶¶ 261–262 (alleging Gonnella last "purchased [JPMS] products . . . in 2018"). Accordingly, her claims are outright barred by the applicable statutes of limitations. *See Marshall,* 2015 WL 3407906, at *2–3 (dismissing claims as barred by applicable statutes of limitations because plaintiff did not sufficiently allege a purchase within limitations period).

### F.   Because Plaintiffs Now Believe JPMS Tests on Animals, They Are Not Entitled to Injunctive Relief

Plaintiffs lack standing to seek an injunction ordering JPMS to cease representing: (1) its

---

[6]   *See* Michelle Reynolds, *Avon, Mary Kay, Estée Lauder Resume Animal Tests*, PETA (Originally Published: Feb. 16, 2012), https://www.peta.org/blog/3-companies-booted-cruelty-free-list/; Shaojie Huang, *China Ends Animal Testing Rule for Some Cosmetics*, N.Y. TIMES (June 30, 2014), https://archive.nytimes.com/sinosphere.blogs.nytimes.com/2014/06/30/china-ends-animal-testing-rule-for-some-cosmetics/.

products were never tested on animals; and (2) it sold in China under exemption. FAC, Prayer for Relief, B–C. A plaintiff "must demonstrate constitutional standing separately for each form of relief requested." *Prescott v. Nestlé USA, Inc.*, 2022 WL 1062050, at *6 (N.D. Cal. Apr. 8, 2022) (quoting *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018)). In a class action, "[u]nless the named plaintiffs are themselves entitled to seek injunctive relief, they may not represent a class seeking that relief." *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1045 (9th Cir. 1999). Thus, named "[p]laintiffs must show a likelihood that they will again be wronged absent an injunction." *Prescott*, 2022 WL 1062050, at *6.

Plaintiffs have not done so here. They cursorily allege they "want[] to keep purchasing JPMS products, but [they] can no longer trust[] the labels." *E.g.*, FAC ¶ 259.  But they also repeatedly allege they "would not have purchased . . . JPMS products had [they] known any . . . had been tested on animals, regardless of where that testing occurred." *See, e.g.,* FAC ¶¶ 258–259 (Gonnella). Obviously, given Plaintiffs' (mistaken) belief JPMS permitted animal testing in China, both cannot be true. Accordingly, Plaintiffs cannot show they likely will again be wronged absent an injunction. *See, e.g., Cimoli v. Alacer Corp.*, 546 F. Supp. 3d 897, 906 (N.D. Cal. 2021) (concluding plaintiff lacked standing to seek injunctive relief because she knew of the alleged misrepresentation and could easily avoid it); *Joslin v. Clif Bar & Co.*, 2019 WL 5690632, at *3 (N.D. Cal. Aug. 26, 2019) (same).

## V.    CONCLUSION

Plaintiffs' claims fail for the reasons set forth above. In response to JPMS's prior motion raising the same arguments, Plaintiffs amended their complaint but did not cure the deficiencies. Accordingly, JPMS requests the Court dismiss the FAC without leave to amend given amendment would be futile.  *See, e.g., Ebner v. Fresh, Inc.*, 838 F.3d 958, 968 (9th Cir. 2016) (Rule 15's "liberality does not apply when amendment would be futile"); *Dam v. Hodges*, 2019 WL 988682, at *3 (C.D. Cal. Jan. 9, 2019) (denying leave to amend given plaintiff already amended once by filing substantially similar complaint).

Dated:  June 1, 2023                    DTO LAW

                                        By:  _/s/ Megan O'Neill_____
                                             Megan O'Neill
                                             Attorney for Defendant
                                             John Paul Mitchell Systems