Shana E. Scarlett (SBN 217895)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 300
Berkeley, California 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
Email: shanas@hbsslaw.com

Robert B. Carey (*Pro Hac Vice*)
Leonard W. Aragon (*Pro Hac Vice*)
Michella A. Kras (*Pro Hac Vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
11 West Jefferson, Suite 1000
Phoenix, Arizona 85003
Telephone: (602) 840-5900
Facsimile: (602) 840-3012
Email: rob@hbsslaw.com
        leonarda@hbsslaw.com
        michellak@hbsslaw.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

RANDALL HEAGNEY, RICA GUERRERO, KERRIE GONNELLA, JOHN ROHLOFF, and JEWEL RULE, individually and on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

JOHN PAUL MITCHELL SYSTEMS,

Defendant.

CASE NO. 3:23-cv-00687-VC
Hon. Vince Chhabria

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT JOHN PAUL MITCHELL SYSTEMS'S MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT**

Date: July 13, 2023
Time: 10:00 a.m.
Place: Courtroom 4 – 17th Floor, 450 Golden Gate Ave., San Francisco, CA 94102

Complaint Filed: February 15, 2023

1

**TABLE OF CONTENTS**

2

**Page**

3

I.      INTRODUCTION ........................................................................................................ 1

4

II.     ARGUMENT .............................................................................................................. 1

5

     A.      Plaintiffs' UCL, FAL, and CLRA claims are plausible. ........................... 1

6

     B.      Plaintiffs' CLRA, FAL, and UCL claims are not based on lack of
          substantiation. ........................................................................................... 5

7

8

     C.      Plaintiffs have alleged a cause of action under the UCL unfair and
          unlawful prongs. ...................................................................................... 8

9

     D.      Plaintiffs have alleged an express warranty claim. .................................. 8

10

     E.      The delayed discovery rule extends the statute of limitations periods. ................. 11

11

          1.      Plaintiffs were not on inquiry notice. ......................................... 11

12

          2.      A reasonable investigation would have turned up nothing. ....................... 12

13

     F.      Plaintiffs have standing to seek injunctive relief. .................................. 14

14

III.    CONCLUSION .......................................................................................................... 15

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2

# <u>TABLE OF AUTHORITIES</u>

3

**Cases**                                                                                     **Page(s)**

4
5
*Antonick v. Elec. Arts Inc.*,
    C 11-01543 CRB, 2011 WL 4501324 (N.D. Cal. Sept. 27, 2011)..........................................13

6
7
*Aryeh v. Canon Bus. Solutions, Inc.*,
    292 P.3d 871 (Cal. 2013)................................................................................................14

8
*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ......................................................................................................1

9
10
*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ........................................................................................1, 6, 8, 9

11
12
*Brodsky v. Apple Inc.*,
    445 F. Supp. 3d 110 (N.D. Cal. 2020)..........................................................................14

13
*Cardenas v. NBTY, Inc.*,
    870 F. Supp. 2d 984 (E.D. Cal. 2012) ..........................................................................11

14
15
*Cimoli v. Alacer Corp.*,
    546 F. Supp. 3d 897 (N.D. Cal. 2021)..........................................................................15

16
*In re Clorox Consumer Litig.*,
    894 F. Supp. 2d 1224 (N.D. Cal. 2012) ..........................................................................8

17
18
*Cmty. Cause v. Boatwright*,
    124 Cal. App. 3d 888 (1981) ........................................................................................12

19
20
*Daugherty v. American Honda Motor Co.*,
    51 Cal. Rptr. 3d 118 (Ct. App. 2006) ............................................................................10

21
*Davidson v. Kimberly-Clark Corp.*,
    889 F.3d 956, 970 (9th Cir. 2018) ..........................................................................14, 15

22
23
*E-Fab, Inc. v. Accountants, Inc. Servs.*,
    153 Cal. App. 4th 1308, 1319 (2007)............................................................................11

24
25
*Engel v. Novex Biotech, LLC*,
    689 F. App'x 510 (9th Cir. 2017)....................................................................................7

26
*Fox v. Ethicon Endo-Surgery, Inc.*,
    110 P.3d 914, 920 (Cal. 2005)................................................................................11, 12

27
28
*Franz v. Beiersdorf, Inc.*,
    No. 14CV2241-LAB EBB, 2015 WL 4659104 (S.D. Cal. Aug. 5, 2015) ...............................7

*Hadley v. Kellogg Sales Co.*,
   243 F. Supp. 3d 1074 (N.D. Cal. 2017) .......................................................................... 8, 10

*Henderson v. J.M. Smucker Co.*,
   No. CV-10-4524-GHK-VBK, 2011 WL 1050637 (C.D. Cal. Mar. 17, 2011) .................. 11, 13

*Johnson-Jack v. Health-Ade LLC*,
   587 F. Supp. 3d 957 (N.D. Cal. 2022) .......................................................................... 15

*Joslin v. Clif Bar & Co.*,
   No. 4:18-CV-04941-JSW, 2019 WL 5690632 (N.D. Cal. Aug. 26, 2019) ........................... 15

*Krommenhock v. Post Foods, LLC*,
   334 F.R.D. 552 (N.D. Cal. 2020) .......................................................................... 14, 15

*Kwan v. SanMedica International*,
   854 F.3d 1088 (9th Cir. 2017) .......................................................................... 6

*Locklin v. StriVectin Operating Co., Inc.*,
   No. 21-CV-07967-VC, 2022 WL 867248 (N.D. Cal. Mar. 23, 2022) ................................ 6

*Marshall v. PH Beauty Labs, Inc.*,
   No. CV 15-02101 DDP, 2015 WL 3407906 (C.D. Cal. May 27, 2015) .............................. 13

*Massachusetts Mut. Life. Ins. Co. v. Sup.Ct.*,
   119 Cal. Rptr. 2d 190 (Ct. App. 2002) .......................................................................... 12

*Myers v. Starbucks Corp.*,
   No. EDCV2000335CJCSHKX, 2020 WL 13302437 (C.D. Cal. July 29, 2020) .................... 7

*Nat'l Council Against Health Fraud, Inc. v. King Bio Pharms., Inc.*,
   107 Cal. App. 4th 1336 (2003) .......................................................................... 6

*NBCUniversal Media, LLC v. Super. Ct.*,
   171 Cal. Rptr. 3d 1 (Ct. App. 2014) .......................................................................... 11

*Perez v. Bath & Body Works, LLC*,
   No. 21-CV-05606-BLF, 2022 WL 2756670 (N.D. Cal. July 14, 2022) .............................. 6

*In re Rubber Chemicals Antitrust Litig.*,
   504 F. Supp. 277 (N.D. Cal. 2007) .......................................................................... 13

*Tubbs v. AdvoCare International, LP*,
   No. CV174454PSGAJWX, 2017 WL 4022397 (C.D. Cal. Sept. 12, 2017) ........................ 9

*In re: Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*,
   No. 2672 CRB (JSC), 2016 WL 4010049 (N.D. Cal. July 26, 2016) ................................ 4

*Weiss v. Trader Joe's Co.*,
   No. 818CV01130JLSGJS, 2018 WL 6340758 (C.D. Cal. Nov. 20, 2018) ........................... 6

**Statutes**

Cal. Com. Code § 2313 ...................................................................................................8

**Rules**

Fed. R. Civ. P. 9(b)........................................................................................................8

Fed. R. Civ. P. 15(a)(2) ................................................................................................15

**Other Authorities**

Madoff Securities Fraud Litigation Under Securities Investor Protection Act (SIPA)
    15 U.S.C.A. §§ 78aaa et seq., 6 A.L.R. Fed. 3d Art. 4 (2015) ..................................4

Theo Leggett, *How VW tried to cover up the emissions scandal* (May 5, 2019),
    https://www.bbc.com/news/business-44005844 (last visited June 15, 2023) .........................4

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.     INTRODUCTION

In moving to dismiss Plaintiffs' First Amended Class Action Complaint ("FAC"), JPMS seeks to dismiss Plaintiffs' claims on the merits and, in part, for lack of standing. Neither argument succeeds. JPMS's merits arguments boil down to speculation and misstatements about what Plaintiffs are alleging. Plaintiffs are not alleging lack of substantiation and have alleged sufficient facts to show or allow a reasonable inference that JPMS's representations were false. JPMS's statements about its claimed animal-testing exemption and motivations are irrelevant at this stage and do not defeat Plaintiffs' well-pleaded factual allegations. JPMS's standing arguments also fail. Because JPMS hid the truth, which cannot be uncovered by a reasonable consumer, the delayed discovery rule applies, defeating JPMS's claims that the statute of limitations has run. Last, Plaintiffs have standing to request injunctive relief, because they all wanted to purchase JPMS products, but cannot rely on JPMS's representations. JPMS's motion to dismiss should be denied.

## II.     ARGUMENT

### A.     Plaintiffs' UCL, FAL, and CLRA claims are plausible.

At the pleading stage, Plaintiffs need only assert sufficient facts to render their claims plausible—enough "to raise a reasonable expectation that discovery will reveal evidence" of the claimed wrongdoing. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). To show Plaintiffs' claims are implausible, JPMS misrepresents Plaintiffs' allegations, inserts speculation about how "maybe" or "perhaps" JPMS had an exemption to animal testing, and argues it is implausible that JPMS would have made such brazen misstatements about its brand and selling in China.

Plaintiffs' FAC plausibly alleges UCL, FAL, and CLRA claims, and JPMS's reliance on far-fetched and, ironically, implausible possibilities does not change this. Plaintiffs first describe with specificity the laws and regulations applicable to animal testing in China, summarizing and attaching translations of those Chinese regulations and the U.S. Department of Commerce Asia Cosmetics Guide. ECF No. 28 ¶¶ 119–152 & Exs. 1–3. Plaintiffs allege that JPMS registered sixty-

two products with the National Medical Products Administration ("NMPA") between 2001–2010 and sixty-three products between 2015–2021, listing the name of the product, the approval date, and approval numbers for each product. *Id.* ¶¶ 153–200 & Exs. 4–5. The NMPA is China's food and drug administration that approves and registers all foreign-produced cosmetics before they can be imported and sold in China. *Id.* ¶¶ 119, 121. Plaintiffs allege that to obtain registrations from the NMPA, JPMS's agent would have to submit applications for its products that include examination and testing reports requiring animal testing. *Id.* ¶¶ 156, 177, 183–186. Plaintiffs allege that JPMS's products could only make it through Chinese customs with the NMPA registration. *Id.* ¶ 187.

Because JPMS cannot challenge either the Chinese animal-testing requirements or its registrations in China, JPMS focuses on Plaintiffs contacting the NMPA to see if an exemption existed and JPMS's work with the Beijing Institute for Drug Control ("BIDC"). ECF No. 32 at 5–6. Even without their allegations about the NMPA and BIDC, Plaintiffs' allegations about China's animal-testing requirements to obtain NMPA registrations of foreign cosmetics and JPMS's numerous NMPA registrations over twenty years (including at least sixty-two registrations before any alleged exemption) meet the plausibility standard. That Plaintiffs included their investigation into JPMS's claimed exemption by contacting both the NMPA and BIDC to verify what they already knew—that no exemption exists—does not transform Plaintiffs' factual allegations into speculation. Negating the existence of an exemption permits an inference that wrongdoing occurred, which differs from speculating that Chinese law itself proves a violation.

Instead of showing that a facial violation of Chinese law, together with the NMPA confirming JPMS had no exemption from animal-testing, is implausible, JPMS oddly lists a litany of implausibilities about why Plaintiffs may not have uncovered its alleged exemption, claiming that "perhaps" the NMPA did not want to "lose face" or could not locate the exemption. *Id.* at 5. JPMS is attempting to defeat Plaintiffs' plausible claims by focusing on possible defenses. While plausible defenses would not defeat plausible claims—because the plausibility standard only asks whether the claims are plausible, not whether there are valid defenses—JPMS's imagined possibilities certainly do not defeat the well-pleaded facts and the beyond-plausible inference that

Chinese law was followed. To bolster its claims, JPMS includes a hypothetical about low-flow shower heads and a story about an Olympic skier. *Id.* at 5–6. Neither scenario helps JPMS.

In JPMS's hypothetical, a developer advertises high-pressure shower heads, but zoning laws require low-flow shower heads, and JPMS asks whether a "plaintiff" could sue for false advertising based on the zoning law. *Id.* at 5. Because JPMS's hypothetical is incomplete, Plaintiffs make some assumptions to respond. *Assuming* the plaintiff was a home purchaser who received low-flow shower heads, the developer advertised high-flow, and the developer certified to the city or state that it complied with all zoning laws, the plaintiff could state a plausible claim by relying on the developer's zoning certification because it is always plausible to assume compliance with the law (which would later be supported by discovery). The same is true here, but the allegations go further and are even more plausible because Plaintiffs allege that, in fact, the NMPA confirmed no exemption existed, which in JPMS's example, would be akin to alleging the manufacturer of the shower heads confirmed that it sold low-flow shower heads to the developer.

JPMS also likens China's possible reluctance to admitting JPMS had an exemption to China giving Eileen Gu an "unacknowledged" exception for dual citizenship, so she could represent China in the 2022 Beijing Olympics. *Id.* at 6. China's "exception" can hardly be unacknowledged when Gu did in fact represent China. And JPMS's acknowledges that the Gu "exception" (if one exists) was for a "high-profile matter" that benefitted China. JPMS's claimed exemption was neither "high-profile" nor did it benefit anyone but JPMS. Additionally, what China may have done for Gu has no bearing on whether Plaintiffs' allegations, which are accepted as true on a motion to dismiss, meet the plausibility standard. It is JPMS's wild suppositions that fail.

JPMS argues that Plaintiffs' claims are not plausible because JPMS would never jeopardize its reputation or tie itself so boldly to never testing on animals. *Id.* at 6–7. In other words, JPMS argues that the more blatant the fraud, the less plausible the fraud becomes under a "common sense" approach. *Id.* If true, no plaintiff could ever properly allege violations of the CLRA, FAL, or UCL, because brazen misrepresentations would defeat plausibility (encouraging companies to be more blatant in their misrepresentations). Yet despite this, there are multiple cases where companies and individuals committed egregious fraud, damaging their reputations in the process.

*See*, *e.g.*, *In re: Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, No. 2672 CRB (JSC), 2016 WL 4010049, at *1 (N.D. Cal. July 26, 2016) (Volkswagen marketed "clean diesel" vehicles "as being environmentally friendly, fuel efficient, and high performing," while intentionally installing defeat devices on its cars to cheat EPA and California emissions test procedures); Major Event Litigation: Madoff Securities Fraud Litigation Under Securities Investor Protection Act (SIPA) 15 U.S.C.A. §§ 78aaa et seq., 6 A.L.R. Fed. 3d Art. 4 (2015) (outlining Bernard Madoff and Madoff Securities decades-long Ponzi scheme, luring in thousands of investors and billions of dollars, by touting his financial expertise and acumen while making no actual securities trades); *see also* Theo Leggett, *How VW tried to cover up the emissions scandal*, BBC.com (May 5, 2019), https://www.bbc.com/news/business-44005844 (last visited June 15, 2023) (showing VW's continued concealment of fraud). And Plaintiffs need not allege why JPMS would jeopardize its reputation to sell in China. They only need to allege that JPMS tested on animals to sell in China, which they have done. JPMS's speculation about why no exemption can be found does not negate the plausibility of Plaintiffs' claims that the relevant institutions deny an exemption and that the law does not permit such an exemption.

JPMS also points to it leaving China and working with the BIDC to find an alternative to animal testing as evidence that Plaintiffs' claims are implausible. ECF No. 32 at 6. But JPMS ignores the full allegations in the FAC: JPMS represented that it left China in 2010 because China "changed the regulations" to require that all products "be tested on animals," but this was false as there was no change in Chinese law in 2010. ECF No. 28 ¶¶ 159–63. Animal testing had been required to sell imported cosmetics in China since at least 1990, and JPMS imported and sold products in China since 2001. *Id.* ¶¶ 121–22, 154. And while Plaintiffs do not have to allege why JPMS left China after testing on animals for ten years, the materials JPMS seeks to incorporate by reference demonstrate that JPMS was one of the companies PETA was investigating before it exposed several companies for testing on animal in China. *Id.* ¶ 157; ECF No. 33-2, Ex. A at 7–14. In response to PETA's multiple inquiries in late 2011 about how JPMS was selling in China, JPMS claimed: "we were in the very early stages of registration attempts in China and have only recently been made aware of the requirement to animal test. We have obviously stopped all registration

activity until we can find an alternative." ECF No. 33-2, Ex. A at 7. This was false as JPMS had registered sixty-two products between 2001 and 2010. If anything, JPMS's additional materials show that its exit from China was motivated by PETA's investigation, not a change in Chinese law.

JPMS's work with the BIDC also does nothing to show Plaintiffs' claims are implausible because the BIDC confirmed that it could not give an exemption to a cosmetics company and only the NMPA could grant an exemption. EFC No. 28 ¶¶ 203–12. JPMS ignores these facts and cites an email from "Randy," dated September 7, 2015 (ECF No. 32 at 6), which allegedly shows JPMS had gained an exemption by September 7, 2015. ECF No. 33-2 at 47. Ignoring that JPMS registered sixty-two products between 2001 and 2009 and an additional fourteen products between May 29, 2015 (JPMS's first registration post-withdrawal) and September 7, 2015 (the date JPMS claims evidence of an exemption), there is no indication who Randy is or who he works for. ECF Nos. 28-4 & 28-5. Nor does the email identify any actual exemption. JPMS claims Randy's email is "evidence" that the exemption "could not be formally documented" and "had to be hidden from the public." ECF No. 32 at 6. But an unauthenticated email, from an unknown source, is not evidence of anything nor does it defeat Plaintiffs' plausible allegations. It also does not explain why China would continue to deny the exemption to this day when JPMS publicly announced to the world in 2017 that China had granted it an exemption. ECF No. 28 ¶ 194. Plaintiffs' well-pleaded claims—that the BIDC could not grant an exemption and the NMPA did not grant an exemption, both of which comport with Chinese law at the time—are plausible.

**B.     Plaintiffs' CLRA, FAL, and UCL claims are not based on lack of substantiation.**

Plaintiffs' CLRA, FAL, and UCL claims are not predicated on lack of substantiation. Plaintiffs' factual basis is predicated on: (1) Chinese law mandates animal testing for the registration and importation of foreign-made cosmetics; (2) JPMS is governed by such requirements; and (3) JPMS registered and imported 125 products into China from 2001 to 2021. *Id.* ¶¶ 119–189. Plaintiffs also probed JPMS's claimed exemption, verifying with the NMPA no such exemption existed, and engaged in CLRA discussions with JPMS, where it presented no evidence or documentation of an exemption. *Id.* ¶¶ 190–214. Plaintiffs have plausibly alleged that JPMS performed animal testing to sell in China and that no exemption exists. And even if JPMS's

1    unsupported exemption impaired the plausibility of Plaintiffs' claims (it cannot), JPMS registered

2    products from 2001 to 2010, showing it performed testing on animals for ten years.

3            JPMS's cases do not support its arguments. In *Kwan v. SanMedica International*, 854 F.3d

4    1088, 1092 (9th Cir. 2017), the court found California does not recognize lack-of-substantiation

5    claims, and the plaintiff there alleged no falsity to support the UCL and CLRA claims. *Id.* at 1096–

6    97; *see also Nat'l Council Against Health Fraud, Inc. v. King Bio Pharms., Inc.*, 107 Cal. App. 4th

7    1336, 1348–50 (2003) (finding FTC and Lanham Acts do not shift burden to defendants to show

8    their advertisements are true). In *Perez v. Bath & Body Works, LLC*, No. 21-CV-05606-BLF, 2022

9    WL 2756670, at *4 (N.D. Cal. July 14, 2022), the court dismissed plaintiff's argument that the

10   defendant had no support for its claim that a product was "clinically tested to instantly lock in

11   moisture," but found plaintiffs' other claims—"Hyaluronic Acid attracts and retains up to 1,000x

12   its weight in water"—were plausible because she "provided allegations of affirmative evidence,"

13   including studies showing those claims were false. *Id.* at *3–4. In *Locklin v. StriVectin Operating

14   Co., Inc.*, No. 21-CV-07967-VC, 2022 WL 867248, at *4 (N.D. Cal. Mar. 23, 2022), the court

15   rejected that the plaintiff brought lack-of-substantiation claims because plaintiff claimed specific

16   chemicals used in the sunscreen were known to harm reefs. *Id.* As the court noted: "at the motion

17   to dismiss stage, complaints need not 'show' or 'establish' anything." *Id.* Plaintiffs do not have to

18   "show" actual testing documents, as JPMS claims, to plausibly allege JPMS engaged in animal

19   testing. *See Twombly*, 550 U.S. at 556 (plausibility "calls for enough fact to raise a reasonable

20   expectation that discovery will reveal evidence" of the complained of conduct). Plaintiffs also do

21   not have to "show" with definitive proof that the exemption does not exist when they sufficiently

22   alleged that animal testing had to occur to obtain the registrations in China. *Id.* The fact that the

23   BIDC stated only the NMPA could provide JPMS with an exemption and the NMPA, the entity

24   responsible for registering foreign cosmetics in China, stated that no exemption exists is additional

25   plausible factual content that the claim of an exemption was false.

26           JPMS's other cited cases are similarly inapplicable. *See Weiss v. Trader Joe's Co.*,

27   No. 818CV01130JLSGJS, 2018 WL 6340758, at *3 (C.D. Cal. Nov. 20, 2018), (finding allegations

28   that "Defendants do not have a single study" and "there is a lack of genuine and reliable scientific

support" for defendant's claims to be non-actionable lack-of-substantiation claims); *Engel v. Novex Biotech, LLC,* 689 F. App'x 510, *510–11 (9th Cir. 2017) ("allegations that defendant's marketing claims are not supported by any reliable clinical trials and that a comprehensive search could not produce any publication to support claims . . . do not support a finding that the advertising claims are actually false, only that they lack substantiation"); *Franz v. Beiersdorf, Inc.*, No. 14CV2241-LAB EBB, 2015 WL 4659104, at *3 (S.D. Cal. Aug. 5, 2015) (allegation that representations were not "proven" and no published trial supported the representations was a lack-of-substantiation claim). Here, Plaintiffs alleged that no exemption existed under Chinese law, the NMPA denied an exemption, and JPMS could not support its claim of an exemption during their CLRA discussions.

Finally, *Myers v. Starbucks Corp.*, No. EDCV2000335CJCSHKX, 2020 WL 13302437, at *1 (C.D. Cal. July 29, 2020), is unavailing. There, the issue was whether three defendants falsely claimed they used "ethical" and "sustainable" cocoa. The plaintiff conceded Quaker's claim—it supported "sustainably sourced cocoa through Cocoa Horizons"—was factually accurate. *Id.* at *4. The court found: "No reasonable consumer could interpret Quaker's label as a promise to eliminate unethical practices from its supply chain." *Id.* at *5. Similarly, plaintiff conceded Mars' statement that it bought "cocoa from Rainforest Alliance Certified farms," was true, but took umbrage with the claim it was "traceable from the farms into our factory." *Id.* But plaintiff's allegations that no company could trace its cocoa was insufficient to show that Mars' claim was false. *Id.* The court also found that plaintiff failed to allege that Starbuck's claims were false. *Id.* at *6. Starbuck's packaging stated: "Made with Ethically Sourced Cocoa" and "Starbucks is committed to purchasing cocoa that's grown in an ethical and transparent way." *Id.* Plaintiff claimed these statements were false because Starbucks used a third-party to verify and audit cocoa farms and there are industry-wide problems obtaining ethically sourced cocoa. *Id.* The court found that plaintiff's allegations were attempts to shift the burden back to Starbucks to substantiate its practices. Here, though, Plaintiffs are not suggesting that JPMS must substantiate that it has an exemption. They allege as fact that JPMS does not have an exemption and JPMS's registrations permit a reasonable inference that they followed Chinese law by testing its products on animals before seeking registration—a fact JPMS's agent certified to the NMPA.

**C.      Plaintiffs have alleged a cause of action under the UCL unfair and unlawful prongs.**

JPMS argues that Plaintiffs' UCL unfair and unlawful prongs fail because they are based on the same allegations as their UCL fraud prong, FAL, and CLRA claims. ECF No. 32 at 9–10. As an initial matter, Plaintiffs do not bring a claim under the fraud prong of the UCL. ECF No. 1 ¶¶ 337—317. Second, because Plaintiffs' FAL and CLRA claims do not fail, neither the UCL unlawful nor unfair prong fails. JPMS's reliance on *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1104–05 (N.D. Cal. 2017), is unavailing because the plaintiff there was claiming the product misrepresented that it was "healthy" when it contained excess amounts of sugar. *Id.* at 1086. The court found the plaintiff "inadequately alleged the amount of added sugar in Defendant's products, and . . . inadequately alleged that the amount of added sugar could plausibly be considered excessive and unhealthy." *Id.* at 1090. As such, the plaintiff failed to show the "statements are false or misleading." *Id.* (citing Fed. R. Civ. P. 9(b)). Here Plaintiffs have alleged a false representation—no animal testing—and have alleged facts supporting its falsity.

**D.      Plaintiffs have alleged an express warranty claim.**

Express warranties arise when sellers make "[a]ny affirmation of fact or promise . . . to the buyer which relates to the goods and becomes part of the basis of the bargain." Cal. Com. Code § 2313. At the pleading stage, Plaintiffs need only allege enough facts to plausibly support a claim that an express warranty was breached. *Twombly*, 550 U.S. 544 at 570.

JPMS first argues Plaintiffs must allege specific facts showing the express promise was untrue, not lack of substantiation. ECF No. 32 at 10. But Plaintiffs have not alleged lack of substantiation and they have alleged specific facts showing the promise was untrue. *See In re Clorox Consumer Litig.*, 894 F. Supp. 2d 1224, 1232 (N.D. Cal. 2012) (allegation that the challenged representation is false is not a lack-of-substantiation claim). Here, Plaintiffs' factual recitations allege compliance with a scheme that requires animal testing, which is enough to defeat a plausibility challenge. ECF No. 28 ¶¶ 119–214 & Exs. 4–5. Each registration, and accompanying examination and testing report, required JPMS's products (all 125 of them) to be tested on animals by the JPMS-selected Chinese lab. *Id*. These facts plausibly support a claim that JPMS tested on animals and JPMS's products did not conform to its cruelty-free promise. *Twombly*, 550 U.S.

at 570. Plaintiffs are private litigants who have alleged, based on their investigation, that JPMS's representations are *false*—not that JPMS's claims are unable to be substantiated. Plaintiffs do not need to shift the burden; discovery will reveal exactly what JPMS did to secure its product registrations. Moreover, regarding JPMS's claim that it had obtained an exemption to Chinese regulations, Plaintiffs also alleged that the NMPA confirmed no such exemption existed and JPMS's provided no evidence of an exemption. ECF No. 28 ¶¶ 195–214. Those facts permit a reasonable inference that animal testing occurred, and that JPMS's representations are false.

*Tubbs v. AdvoCare International, LP*, No. CV174454PSGAJWX, 2017 WL 4022397 (C.D. Cal. Sept. 12, 2017), likewise supports Plaintiffs' position. First, the *Tubbs* court held that allegations demonstrating falsity cure any substantiation concerns. *Id.* at *6. This alone rejects JPMS's argument. Second, Plaintiffs do not need to "save" any substantiation claim because they do not assert one. Nor do they question whether proof exists that JPMS tested its products on animals using Chinese labs. Plaintiffs' claim is based on a long-running falsehood sufficiently explained by the FAC's allegations, not a demand for JPMS to prove the truth of its statements. Plaintiffs allege that JPMS has followed the legal process to secure over 100 product registrations, each of which requires animal testing and certification of compliance with animal-testing standards. ECF No. 28 ¶¶ 153–89. This factual content raises "a reasonable expectation that discovery will reveal evidence" of the claimed wrongdoing. *Twombly*, 550 U.S. at 556.

JPMS next argues that because Plaintiffs did not buy products in China, nor did they allege the Chinese and U.S. products share the same ingredients or are part of the same development lot, the claim must fail (even though the products JPMS imported to China were, according to the labels, "made in the U.S.A.") ECF No. 32 at 11; ECF No. 28 ¶ 189. JPMS ignores that Plaintiffs' allegations include JPMS's expansive anti-cruelty assurances. Plaintiffs allege that cruelty-free means that no animal testing is done on products or ingredients anywhere in the development, testing, manufacturing, or production of the product. ECF No. 28 ¶ 43. The "Beauty Without Bunnies" certification program requires a statement of assurance, which JPMS signed, that no animal testing on a company's products occurs anywhere in the world. *Id.* ¶¶ 52–53. JPMS warranted on all its products that it did "no animal testing," it was a "pioneer in cruelty-free hair

care," and it "does not condone or endorse animal testing." *Id.* ¶ 73. The promise that the goods must conform to is that *JPMS never* does animal testing. Despite its promises not being so limited, JPMS asks this Court to find those promises apply only to the exact products Plaintiffs purchased, products that share identical ingredients, or products from the same development lot. ECF No. 32 at 11. The pleading stage is not the time to resolve which of various constructions are appropriate. It is enough that Plaintiffs' constructions are plausible. But no reasonable interpretation can ignore the public concern about animal testing in the cosmetics industry and the considerable "public support for banning animal testing." ECF No. 28 ¶¶ 92–112. When the manufacturer promises that it ***never*** engages in animal testing, a breach of warranty can occur when there is ***any*** animal testing by the manufacturer. Plaintiffs allege facts to plausibly construe JPMS's promise that it performs no animal testing, no matter where it occurs in the world (as JPMS pledged to participate in PETA's certification program).

JPMS's reliance on *Daugherty v. American Honda Motor Co.*, 51 Cal. Rptr. 3d 118 (Ct. App. 2006), as modified (Nov. 8, 2006), and *Hadley v. Kellogg Sales Co*., 243 F. Supp. 3d 1074 (N.D. Cal. 2017), is misplaced. *Daugherty* said nothing more than a "warranty is a contractual promise from the seller that the goods conform to the promise," concluding that it would not read in an obligation to repair outside the stated warranty period when Honda "did not agree, and plaintiffs did not understand it to agree" to do so. *Daugherty,* 51 Cal. Rptr. 3d at 122–23. Nor does *Hadley* support JPMS's contorted proposition that the promise is only that the exact item purchased needs to conform to the promise of no animal testing. The *Hadley* court dismissed the express warranty claims because the plaintiff did not outline which of the sixty-five statements pertained to each of the fifty-three products at issue. *Hadley*, 243 F. Supp. 3d at 1105–06 ("Such a list of statements does not indicate the exact terms of the warranty for each product at issue."). Indeed, the court recognized the opposite of what JPMS argues, as reflected by its criticism that the alleged warranty statements were not attributed to their respective "specific product variant." *Id.* Nothing in *Hadley* suggests that the court would have extended the promise to have specific amounts of fiber or sugar to the actual box or from the same production lot consumed by the plaintiff. Plaintiffs have asserted enough facts to render their claim for breach of express warranty plausible and allow

1    JPMS to "adequately prepare a defense against the charge and not merely deny that they have done

2    anything wrong." *See Cardenas v. NBTY, Inc.*, 870 F. Supp. 2d 984, 994 (E.D. Cal. 2012).

3    **E.      The delayed discovery rule extends the statute of limitations periods.**

4            JPMS argues that the statute of limitations bars Plaintiffs' claims that are outside the

5    limitations period. ECF No. 32 at 12. But to invoke the delayed discovery rule and extend the

6    limitations period, Plaintiffs only need to plead enough facts regarding "(1) the time and manner of

7    discovery and (2) the inability to have made earlier discovery despite reasonable diligence."

8    *Henderson v. J.M. Smucker Co.*, No. CV-10-4524-GHK-VBK, 2011 WL 1050637, at *2 (C.D. Cal.

9    Mar. 17, 2011) (quoting *E–Fab, Inc. v. Accountants, Inc. Servs.*, 153 Cal. App. 4th 1308, 1319

10   (2007)). JPMS concedes that Plaintiffs alleged the time and manner of discovery—each Plaintiff

11   alleged that they learned from their counsel in 2022 that JPMS had engaged in animal testing. ECF

12   No. 32 at 13. JPMS thus limits its argument to the second element, whether Plaintiffs alleged

13   sufficient facts to show an inability to make an earlier discovery despite reasonable diligence. *Id.*

14           **1.      Plaintiffs were not on inquiry notice.**

15           JPMS ignores that this discovery rule delays accrual until "the plaintiff has, or should have,

16   inquiry notice of the cause of action." *Fox v. Ethicon Endo-Surgery*, *Inc.*, 110 P.3d 914, 920 (Cal.

17   2005). "Rather than examining whether the plaintiffs suspect facts supporting each specific legal

18   element of a particular cause of action, we look to whether the plaintiffs have reason to at least

19   suspect that a type of wrongdoing has injured them." *Id.* JPMS can point to nothing that would

20   have caused Plaintiffs to suspect they were injured, and Plaintiffs allege they were unaware of

21   JPMS's animal-testing practices in China. ECF No. 28 ¶¶ 212, 222, 236, 249, 263. Because no

22   reasonable consumer knew or suspected that JPMS tested its products on animals—a fact hidden

23   by JPMS (*Id.* ¶¶ 194–99), Plaintiffs were not on inquiry notice. *See NBCUniversal Media, LLC v.*

24   *Super. Ct.*, 171 Cal. Rptr. 3d 1, 9 (Ct. App. 2014) (recognizing the discovery rule is appropriate

25   when the "injury itself (or its cause) is hidden or beyond what the ordinary person could be

26   expected to understand") (citations omitted); *Fox*, 110 P.3d at 920 ("a reasonable investigation [is

27   required] after becoming aware of an injury," and not before).

28

1

2. **A reasonable investigation would have turned up nothing.**

2

Under the delayed discovery rule, a cause of action arises when the plaintiff suspects an

3

injury and a wrongful cause, unless it can be proven that a reasonable investigation would have

4

revealed the factual basis for that cause of action. *Fox*, 110 P.3d at 921. Plaintiffs here were

5

unaware they were injured until they spoke to their attorneys and first learned of JPMS's egregious

6

conduct. And even if they had suspected an injury (they did not), a reasonable investigation did not

7

reveal a factual basis for the claims. Each Plaintiff carried out reasonable investigations of JPMS

8

which led them to believe JPMS did no animal testing. ECF No. 28 ¶¶ 225–26, 236–41, 254–56,

9

268–70, 282–85. For example, Plaintiff Kerrie Gonnella "did a Google search about JPMS,

10

reviewed JPMS's product labels, and searched PETA's website for JPMS" to verify JPMS was

11

cruelty-free. *Id.* ¶ 254. No ordinary consumer investigation would have revealed a cause of action.

12

Publicly, JPMS represented on its website, on social media, and its packaging that it had

13

never and would never perform animal testing. *Id.* ¶¶ 48–73. Reasonable diligence would have

14

revealed a company that zealously, pervasively, and unequivocally denied animal testing. Any

15

reasonable investigation into JPMS's sales in China would have similarly confirmed JPMS's public

16

claim it had an exemption from the animal-testing requirement. *Id.* ¶¶ 110, 194–99. JPMS still

17

claims an exemption from the animal-testing requirement. *Id.* ¶ 201. This allegation rebuts the

18

cornerstone of JPMS's motion—that it was public information that China required animal testing

19

for all cosmetics imported into China—and shows that JPMS publicized that it had an exemption

20

(when it did not) to convince the public that JPMS was not violating Chinese law. *See Cmty. Cause

21

v. Boatwright*, 124 Cal. App. 3d 888, 889 (1981) (defendant who conceals fraud cannot use statute

22

of limitations to protect itself); *Fox*, 110 P.3d at 917 (claim does not accrue if a "reasonable

23

investigation at that time would not have revealed a factual basis" for action).

24

JPMS argues that reasonable diligence involves studying Chinese law (and by extension

25

translating those regulations from Chinese), tracking down JPMS's registrations (also in Chinese),

26

and tracking down the alleged exemption. But the discovery rule only starts when a "reasonable

27

person would have discovered the basis for a claim." *E.g.*, *Massachusetts Mut. Life. Ins. Co. v.

28

Sup.Ct.*, 119 Cal. Rptr. 2d 190, 199 (Ct. App. 2002). Typically, defendants must point to specific

facts the plaintiff should have been aware of within the limitations period that put the plaintiff on inquiry of his claims. *Antonick v. Elec. Arts Inc.*, C 11-01543 CRB, 2011 WL 4501324, at *5 (N.D. Cal. Sept. 27, 2011). Instead of identifying anything that would have put Plaintiffs on notice, JPMS instead claims a simple internet search would have, for example, revealed the PETA article cited by Plaintiffs. ECF No. 32 at 13. Ignoring that Plaintiffs had no reason to search for JPMS's practices in China or question JPMS's cruelty-free representations, the cited article would not have, as JPMS claims, "turned up the facts Plaintiffs now claims JPMS is liable—that China requires animal testing and that JPMS sold in China." *Id.* The article reports that JPMS pulled out of China "after being informed that the company would have to pay for animal tests in order to continue selling its products there . . . JPMS will not sell products in that country in order to remain committed to the company's cruelty-free policy." ECF No. 28 ¶ 159 n.3. It also reports that JPMS's "products have never been tested on animals anywhere in the world." If anything, the article makes it seem as if JPMS did not test in China and left when animal testing was required, which was false. The article does not provide any information that would have led a reasonable consumer to figure out that JPMS was ever animal testing in China or that JPMS's later claimed exemption was false. JPMS has not identified any reasonably available information a person could use to identify the factual basis for the causes of action. *Cf. In re Rubber Chemicals Antitrust Litig.*, 504 F. Supp. 277, 789 (N.D. Cal. 2007) (recognizing "it is generally inappropriate to resolve the fact-intensive allegations of fraudulent concealment at the motion to dismiss stage, particularly where the proof relating to the extent of the fraudulent concealment is alleged to be largely in the hands of the defendants"). *Marshall v. PH Beauty Labs, Inc.*, No. CV 15-02101 DDP, 2015 WL 3407906, at *2 (C.D. Cal. May 27, 2015), used by JPMS, has no application because use of the product revealed its falsity. Here, using the product would not reveal that JPMS was testing on animals. *Compare id. with Henderson*, 2011 WL 1050637, at *2 (delayed discovery appropriate where plaintiff alleged he is "not an expert on nutrition" and did not know label was false until speaking to an expert).

JPMS also argues that the "continuous accrual" doctrine applies, preventing Plaintiffs from asserting claims over purchases outside the limitations period. ECF No. 32 at 14. But JPMS misconstrues the continuous accrual doctrine, which California courts have confined "to 'a limited

category of cases, including installment contracts, leases with periodic rental payments, and other types of periodic contracts that involve no fixed or total payment amount.'" *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 136 (N.D. Cal. 2020) (citations omitted). This District "has repeatedly noted that when an alleged duty 'bears little relation to the monthly payments or monthly bills that California courts have found to be periodic, recurring obligations,' applying the continuous accrual doctrine is unwarranted." *Id.* at 136–37 (citing cases); *see also id.* at 136 (continuous accrual doctrine only applies "to UCL claims when the claims involved unlawful charges in monthly bills" (citing *Aryeh v. Canon Bus. Solutions, Inc.*, 292 P.3d 871 (Cal. 2013))).

Plaintiffs' factual allegations that, as consumers, they actively pursue cruelty-free or animal-testing-free products, together with JPMS's pervasive efforts to present itself as a company that avoids animal testing—and the absence of any evidence suggesting JPMS's exemption claim was false or that JPMS was in fact testing on animals in China—are enough to show Plaintiffs, even with reasonable diligence, would have had no knowledge that JPMS did not have an exemption and was testing on animals. The delayed discovery rule should apply.

**F.      Plaintiffs have standing to seek injunctive relief.**

There are two circumstances where a plaintiff in a false labeling case may seek injunctive relief: "(i) where plaintiffs 'would like to' buy the product again but 'will not' because they 'will be unable to rely on the product's advertising or labeling' without an injunction; or (ii) where the consumer 'might purchase the product in the future' because they 'may reasonably, but incorrectly, assume the product was improved.'" *See Krommenhock v. Post Foods, LLC*, 334 F.R.D. 552, 572 (N.D. Cal. 2020) (citing *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 970 (9th Cir. 2018)). Because the standard is disjunctive, a plaintiff need only satisfy one prong. *Id*. Here, Plaintiffs satisfy the first prong because they have each alleged that they wanted to continue purchasing JPMS's products, but they do not trust JPMS's labeling. ECF No. 28 ¶¶ 233, 244, 259, 273, 288. They also satisfy the second prong because they seek injunctive relief for consumers who purchase JPMS products under the reasonable, but incorrect, belief the product is not tested on animals. ECF No. 28 ¶¶ 302, 324, 336, 349 and Prayer for Relief B and C. And there is no way for future consumers to determine whether JPMS tests on animals by examining the label. *Krommenhock*,

334 F.R.D. at 572. An injunction is the only way to prevent future consumer deception, making injunctive relief appropriate. *Id.*; *see also Davidson*, 889 F.3d at 970 (recognizing the primary form of relief available under California UCL, CLRA, and FAL is injunctive relief) (citations omitted). Injunctive relief is appropriate where, as here, Plaintiffs would like to buy the product again but cannot rely on the products' advertising or labeling absent an injunction. *Johnson-Jack v. Health-Ade LLC*, 587 F. Supp. 3d 957, 976 (N.D. Cal. 2022) (collecting cases).

JPMS argues that because each Plaintiff alleged that they would not have purchased JPMS products had they known the products had been tested on animals, they cannot also show they would purchase again or be deceived in the future. But JPMS's cited cases do not support its argument. In both *Cimoli v. Alacer Corp.*, 546 F. Supp. 3d 897, 906–07, (N.D. Cal. 2021), and *Joslin v. Clif Bar & Co.*, No. 4:18-CV-04941-JSW, 2019 WL 5690632, at *4 (N.D. Cal. Aug. 26, 2019), the front of the packaging was misleading, but the back of the packaging disclosed the truth of the product. In both cases there was no risk of future harm because the plaintiffs knew where to look in the future. "[W]hen another part of that product's packaging discloses the truth of the product, district courts have held that a plaintiff's knowledge of the truth forecloses the risk of future harm." *Joslin*, 2019 WL 5690632, at *4; *see also Cimoli*, 546 F. Supp. 3d at 906 (finding injunctive relief appropriate when a plaintiff has "no way of determining whether Defendant's representations are true"). Here, there is no label Plaintiffs can look to in the future to determine whether JPMS is complying with its animal-cruelty promise, making injunctive relief appropriate.

### III.        CONCLUSION

JPMS argues that Plaintiffs should not be given leave to amend because the FAC did not cure the deficiencies. But Plaintiffs mainly amended the Complaint in response to JPMS's Fed. R. Civ. P. 11 motion, within the twenty-one days allowed by Rule 11. If the Court determines there are any deficiencies raised by JPMS's Motion to Dismiss, Rule 15 requires that Plaintiffs be given the chance to amend to cure any deficiencies raised by that motion. Fed. R. Civ. P. 15(a)(2). For the foregoing reasons, the Court should deny JPMS's Motion to Dismiss.

1    DATED: June 15, 2023                          HAGENS BERMAN SOBOL SHAPIRO LLP

2

3                                                  By: */s/ Robert B. Carey*
                                                       Robert B. Carey (*Pro Hac Vice*)
4                                                  HAGENS BERMAN SOBOL SHAPIRO LLP
                                                   11 West Jefferson, Suite 1000
5                                                  Phoenix, Arizona 85003
                                                   Telephone: (602) 840-5900
6                                                  Facsimile: (602) 840-3012
                                                   Email: rob@hbsslaw.com
7

8                                                  Leonard W. Aragon (*Pro Hac Vice*)
                                                   Michella A. Kras (*Pro Hac Vice*)
9                                                  HAGENS BERMAN SOBOL SHAPIRO LLP
                                                   11 West Jefferson, Suite 1000
10                                                 Phoenix, Arizona 85003
                                                   Telephone: (602) 840-5900
11                                                 Facsimile: (602) 840-3012
                                                   Email: leonarda@hbsslaw.com
12                                                        michellak@hbsslaw.com

13

14                                                 Shana E. Scarlett (SBN 217895)
                                                   HAGENS BERMAN SOBOL SHAPIRO LLP
15                                                 715 Hearst Avenue, Suite 300
                                                   Berkeley, California 94710
16                                                 Telephone: (510) 725-3000
                                                   Facsimile: (510) 725-3001
17                                                 Email: shanas@hbsslaw.com

18                                                 *Attorneys for Plaintiffs*

19

20

21

22

23

24

25

26

27

28