UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RANDALL HEAGNEY, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>JOHN PAUL MITCHELL SYSTEMS,<br><br>    Defendant. | Case No. 23-cv-00687-VC<br><br>**ORDER DENYING IN PART AND GRANTING IN PART MOTION TO DISMISS**<br><br>Re: Dkt. Nos. 32, 33 |

    The motion to dismiss is denied in part and granted in part. The consumers plausibly state false advertising and breach of warranty claims, and it is not obvious from the pleadings that those claims are barred by the statute of limitations. But the consumers lack standing for injunctive relief. This ruling assumes the reader is familiar with the facts, the applicable legal standard, and the arguments made by the parties.

    *False advertising.* The consumers have done enough to state a false advertising claim. As the complaint tells it, Paul Mitchell has long marketed its business and its products as "cruelty-free." *See* Dkt. No. 28 ¶¶ 48–73. The plaintiffs say they took Paul Mitchell at its word and bought some of those products. But Paul Mitchell, they allege, once imported those products into China and registered them with the Chinese government—at a time when Chinese law required that companies test cosmetic imports on animals as a condition of registration. *See* Dkt. No. 28 ¶¶ 118–30, 136, 143–56. And, according to the complaint, Paul Mitchell was not exempt from that requirement. *See* Dkt. No. 28 ¶¶ 195, 200, 212.

    Read together and taken as true, these allegations plausibly suggest that Paul Mitchell

tested some of its cosmetic products on animals and that its contrary "cruelty-free" advertising misled reasonable consumers. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007); *see Williams v. Gerber Products Co.*, 552 F.3d 934, 938 (9th Cir. 2008).

Paul Mitchell insists that there's another explanation for all of this. Maybe the company did have an exemption. Maybe China wasn't enforcing its import registration laws. Or maybe something was "lost in translation" when the consumers reached out to the Chinese government to inquire whether Paul Mitchell was exempt. Each of these explanations might be possible, but none are so "natural" or "obvious" as to make the complaint implausible. *Twombly*, 550 U.S. at 567–68; *see also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

Paul Mitchell is also wrong to argue that the complaint presents a "lack of substantiation" challenge. The consumers have not merely alleged that the "cruelty-free" labels are false and left it at that, thereby "forcing the defendant to produce evidence that the claim is true." *National Council Against Health Fraud v. King Bio Pharmaceuticals, Inc.*, 107 Cal. App. 4th 1336, 1345 (2003). Instead, the complaint offers specific allegations—the import registry, the relevant Chinese regulations, and confirmation from the appropriate Chinese agency—"pointing to actual falsehood." *Kwan v. SanMedica International*, 854 F.3d 1088, 1096 (9th Cir. 2017).

It's true that more direct evidence "establishing falsity"—like "specific test reports, knowledgeable persons, or third-party articles"—would strengthen the consumers' case. ECF No. 32, at 8 (Motion to Dismiss). "But at the motion to dismiss stage, complaints need not 'show' or 'establish' anything." *Locklin v. StriVectin Operating Company, Inc.*, 2022 WL 867248, at *4 (N.D. Cal. Mar. 23, 2022) (citing *Ashcroft v. Iqbal*, 446 U.S. 662, 678 (2009)). The standard is plausibility, and the complaint here satisfies it.[1]

---

[1] Paul Mitchell's motion to incorporate by reference is granted in part and denied in part. The Memorandum of Understanding and Cooperation Agreement between Paul Mitchell and the BIDC, the plaintiffs concede, may be incorporated by reference. But there is no reason to treat the rest of the materials as though they were "part of the complaint itself." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018). None of the remaining documents are referred to "extensively" in the complaint. *Id.* And none of them form the basis of the consumers' claims; the complaint does not turn on either their existence or their contents. *See id.*; *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

*Breach of warranty.* The consumers have also done enough to state a breach of warranty claim. A warranty claim, Paul Mitchell argues, must allege that a specific product has fallen short of a specific promise. The complaint does just that, specifying the exact products that allegedly failed to live up to their "cruelty-free" labeling or Paul Mitchell's "cruelty-free" marketing. *See* Dkt. No. 28 ¶¶ 228–29 (Awapuhi Shampoo; Awapuhi Conditioner); *id.* ¶¶ 246–50 (Clean Beauty Anti-Frizz Shampoo; SUPER SKINNY Serum; Tea Tree Shampoo); *id.* ¶¶ 261–64 (Tea Tree Special Shampoo; Tea Tree Lemon Sage Thickening Conditioner; Tea Tree Lemon Sage Thickening Shampoo); *id.* ¶¶ 275–78 (Soft Sculpting Spray Gel; Awapuhi Moisture Mist; The Conditioner); *id.* ¶¶ 290–93 (Tea Tree Special Color Conditioner; Tea Tree Special Shampoo; Flexible Style Round Trip; Ultimate Wave, Awapuhi Wild Ginger Styling Treatment Oil; Awapuhi Wild Ginger Hydrocream Whip).

Some of the purchased products, true enough, do not appear in the Chinese import registry. *See* Dkt. No. 28 ¶ 229 (Awapuhi Conditioner); *id.* ¶ 249 (Clean Beauty Anti-Frizz Shampoo; Tea Tree Shampoo); *id.* ¶ 278 (Soft Sculpting Spray Gel; Awapuhi Moisture Mist); *id.* ¶ 293 (Tea Tree Special Color Conditioner; Flexible Style Round Trip; Ultimate Wave, Awapuhi Wild Ginger Styling Treatment Oil; Awapuhi Wild Ginger Hydrocream Whip); Dkt. No. 28-4; Dkt. No. 28-5. So the complaint fails to plausibly allege that those products were ever animal tested.

But even as to those products, the complaint plausibly alleges that Paul Mitchell breached its "cruelty-free" warranty. That's because, in its marketing, Paul Mitchell doesn't just advertise that it sells "cruelty-free" goods. It also promises that it is a "cruelty-free" company—that it has never done animal testing, ever. *See* Dkt. No. 28 ¶¶ 3–4, 48–70. Put another way, with every Paul Mitchell product comes a pair of promises: you are buying a product that has never been animal tested, and you are buying from a company that never animal-tests. Relying on both promises, the consumers here purchased various Paul Mitchell products—some that (plausibly) were animal tested and some that weren't. Because the consumers plausibly allege that Paul Mitchell broke its first promise as to some products, they also plausibly allege that Paul Mitchell

3

broke its second as to all.

*Statute of limitations.* Under California law, the relevant limitations period is three years for some of the claims and four years for the rest. *See* Cal. Civ. Proc. Code § 338(a) (three years for FAL); Cal. Civ. Code § 1783 (three for CLRA); Cal. Bus. & Prof. Code § 17208 (four for UCL); Cal. Com. Code § 2725 (four for breach of warranty). Most of the alleged purchases were made within the tighter three-year window. *See* Dkt. No. 28 ¶ 228 (2020); *id.* ¶ 247 (2022); *id.* ¶ 276 (2021); *id.* ¶ 291 (2020 to 2022). Some, however, fall outside even the four-year window. *See* Dkt. No. 28 ¶ 228 (2014 to 2015); *id.* ¶ 262 (2018); *id.* ¶ 291 (2018). And the class definition includes purchases made as far back as May 2015.

But, taking the complaint at its word, all of these purchases are actionable. Under the delayed-discovery rule, the clock started to run in 2022, when the consumers say they first learned about the alleged animal-testing—not at the point of purchase. Until they spoke with counsel in 2022, there was no reason for any of the consumers to even suspect that they had been misled. *See Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 807–08 (2005). Unlike the kinds of claims you see in other false-advertising or warranty cases, a promise that a product is "cruelty free" is not something that a customer can easily test. *Cf. Brown v. Madison Reed, Inc.*, 622 F. Supp. 3d 786, 800 (N.D. Cal. 2022) (brittle hair and hair loss); *Marshall v. PH Beauty Labs, Inc.*, 2015 WL 3407906, at *1 (C.D. Cal. May 27, 2015) (anti-aging).

What's more, any "reasonable and diligent investigation" into the matter would have only dispelled concerns about Paul Mitchell's "cruelty-free" promises. *Fox*, 35 Cal. 4th at 813. No article that Paul Mitchell cites suggests that the company imported its products into China when animal-testing was required. One PETA article calls out three cosmetics companies for animal-testing in China but does not mention Paul Mitchell at all. The 2012 PETA press release comes closer, but it commends Paul Mitchell for choosing to "pull out of the Chinese market entirely than hurt even one animal." If anything, these sources suggest that Paul Mitchell did live up to its "cruelty-free" mandate; they could not have formed the basis of the consumers' complaint.

*Standing.* The consumers lack standing to seek an injunction. Sometimes it is appropriate

4

for a consumer who has already been misled by false advertising or labeling to seek an injunction. They might "reasonably, but incorrectly, assume the product was improved" and buy it again. *Davidson v. Kimberly–Clark Corporation*, 889 F.3d 956, 970 (9th Cir. 2018). Or they might not buy the improved version, even if they would "like to," concerned that they can't "rely on the product's advertising or labeling." *Id.* at 969–70. Both cases involve injuries that an injunction could prevent.

   But they are injuries only because the consumer can't know for certain whether the ad or label is still misleading. You can't be misled by—or even uncertain about—something that you know is wrong. Think of a tea that claims to be "100% Natural" yet contains some non-natural ingredients. *See Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 534 (N.D. Cal. 2012). Even if you learn that the "100% Natural" label was "false in the past," you can't be certain that it will "remain false in the future." *Davidson*, 889 F.3d at 969. (The manufacturer could, for instance, remove all of the non-natural ingredients.) So you might buy the tea again, "reasonably, but incorrectly, assum[ing]" that it is now all natural. *Id.* at 970. Or you might not buy it, even if would "like to," since you can't be sure whether the advertising or labeling is accurate. *Id.* at 969–70.

   This case is different. Recall the twin promises that Paul Mitchell makes to its customers: you are buying a product that has never been animal tested, and you are buying from a company that has never done animal testing. For either promise, if you were to learn that it "was false in the past," you can be sure that it will "remain false in the future." *Id.* at 969. By definition, a product that has been animal tested once—and a company that has animal-tested once—can never be "cruelty free" again.

   What injury then, to these plaintiffs, would an injunction prevent? None, really. The plaintiffs allege they would have continued buying Paul Mitchell products if not for the labeling. *See* Dkt. No. 28 ¶¶ 233, 244, 259, 273, 288. But why would the labeling matter at all? Assume that Paul Mitchell, going forward, keeps its cruelty-free labeling. A plaintiff who decides to repurchase the same Paul Mitchell merchandise does so knowing full well that those products

5

will not live up to what is promised. And a plaintiff who is reluctant to repurchase can't fault the labeling; they know that it is misleading. Neither the labeling nor the marketing makes any difference.

Key portions of the complaint confirm the point. The consumers allege that they wouldn't have purchased from Paul Mitchell had they known that any of its products had been animal tested. *See* Dkt. No. 28 ¶¶ 227, 240, 243, 250, 255, 258, 272, 287. Now that the consumers know what they know, why would they even think about purchasing the same products from Paul Mitchell again? Because they face no risk of future injury, injunctive relief is unavailable.

**IT IS SO ORDERED.**

Dated: August 2, 2023

VINCE CHHABRIA
United States District Judge