Shana E. Scarlett (SBN 217895)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 300
Berkeley, California 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
Email: shanas@hbsslaw.com

Robert B. Carey (*Pro Hac Vice*)
Leonard W. Aragon (*Pro Hac Vice*)
Michella A. Kras (*Pro Hac Vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
11 West Jefferson, Suite 1000
Phoenix, Arizona 85003
Telephone: (602) 840-5900
Facsimile: (602) 840-3012
Email: rob@hbsslaw.com
       leonarda@hbsslaw.com
       michellak@hbsslaw.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| RANDALL HEAGNEY, RICA GUERRERO, KERRIE GONNELLA, JOHN ROHLOFF, and JEWEL RULE, individually and on behalf of themselves and all others similarly situated,<br><br>          Plaintiffs,<br><br>  v.<br><br>JOHN PAUL MITCHELL SYSTEMS,<br><br>          Defendant. | CASE NO.  3:23-cv-00687-VC<br>Hon. Vince Chhabria<br><br>**PLAINTIFFS' MOTION TO COMPEL DISCOVERY OF PRE-2011 CONDUCT**<br><br>Hearing Date: February 29, 2024<br>Time: 2:00 p.m. |

## I.  INTRODUCTION

Plaintiffs request an order compelling JPMS to produce documents and answer discovery related to its pre-2011 conduct in China. Plaintiffs issued Requests for Production, Requests for Admission ("RFAs"), and Non-Uniform Interrogatories ("NUIs") to JPMS seeking documents that go to the crux of the case and phase one discovery—whether JPMS conducted animal testing to register its products in China. Decl. of Michella Kras ("Kras Decl."), Exs. 1–3. Plaintiffs sought applications and toxicology reports submitted to the NMPA (Chinese FDA), registrations obtained from the NMPA, and communications related to such applications and registrations. *Id.*, Ex. 1 at Requests 1–4. Plaintiffs asked JPMS to admit that it obtained the NMPA registrations listed in the First Amended Complaint ("FAC"), admit it submitted examination and animal testing reports to obtain those registrations, and admit whether certain entities in China acted as JPMS's agent in China. *Id.*, Ex. 2 at RFAs 1–7. Plaintiffs also asked JPMS to explain how the registrations were obtained with or without animal testing. *Id.*, Ex. 3 at NUI 2.

After several meet and confers, JPMS maintained that requests for its pre-2011 conduct are irrelevant, unduly burdensome, and disproportionate to the needs of the case.[1] *Id.*, Exs. 4–9. JPMS claims irrelevance because the proposed class does not start until 2015, the FAC focuses on JPMS's post-2014 conduct in China, and JPMS did not have a subsidiary in China until 2014. *Id.* On burden, JPMS has not identified the cost or effort required produce such documents, despite Plaintiffs' requests for such information, nor has it identified how answering RFAs and NUIs is burdensome. *Id.* To date, JPMS has only produced emails after its 2014 self-selected start date and answered the RFAs and NUIs for post-2014 conduct. *Id.*, Exs. 4–6.

In response, Plaintiffs have detailed why the discovery is relevant: the FAC outlines conduct dating back to 2001, the scope of discovery is not defined by a proposed class period where animal testing between 2001–2010 would breach JPMS's promise that it never conducted animal testing in the past, the class period may be expanded to include earlier claims given JPMS's

---

[1] JPMS initially claimed that any conduct before July 2014 was irrelevant, later agreeing to provide responses back to 2011. But as JPMS was not registering products in China between 2011 and 2014, this longer time frame has not provided any additional substantive responses.

concealment, and JPMS's emails reveal that animal testing likely occurred during that earlier period. *Id.*, Exs. 7, 9. On burden, Plaintiffs have detailed that it is not burdensome to merely answer RFAs and NUIs. *Id.*, Ex. 9 at 3. For example, JPMS should be able to admit whether it obtained the NMPA registrations listed in Exhibit 4 of the FAC, whether animal testing was required to obtain those registrations (particularly when there are emails referencing that earlier animal testing), or admit whether an entity acted as JPMS's agent in China. On the document requests, Plaintiffs offered to meet and confer on whether a shorter time frame is appropriate, if JPMS would identify to what extent those documents exist, where they are stored, whether that storage goes back to 2001, the ability to retrieve those documents, whether search terms can be used, whether custodians can be identified, and whether there is some additional burden associated with a simple extension of the date range. *Id.*, Ex. 7 at 2–3, Ex. 9 at 4. JPMS refused. *Id.*, Ex. 8.

## II.     ARGUMENT

The scope of discovery under the Federal Rules is extremely broad. A relevant matter is "any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Soto v. City of Concord*, 162 F.R.D. 603, 610 (N.D. Cal. 1995). Here, as the Court directed, the requested discovery targets animal testing, which is the single most important issue in the case. Plaintiffs' FAC alleges that JPMS breached its promise to consumers that it was cruelty free and ***never*** animal tested by performing animal tests in China starting in 2001. ECF No. 28 ¶¶ 49–73, 156–156, 178–187. Those promises include "no animal testing, never have, never will," "we've never tested our products on animals (and never will!)," and "cruelty-free since 1980." *Id.* ¶¶ 51, 55, 63–64. As this Court explained, "with every Paul Mitchell product comes a pair of promises: you are buying a product that has never been animal tested, and you are buying from a company that never animal-tests." ECF No. 51 at 3. Given these promises, the question of whether JPMS performed animal testing from 2001 to 2010 (the time-period JPMS is trying to exclude) is case dispositive. This is not a case where JPMS merely promised it was currently cruelty free or cruelty free since 2015. In rejecting Plaintiffs' request for injunctive relief, the Court understood JPMS was making promises about past conduct: "For either promise, if you were to learn that it 'was false in the past,' you can be sure that it will 'remain false in the future.'

By definition, a product that has been animal tested once—and a company that has animal-tested once—can never be 'cruelty free' again." *Id.* at 5. As any animal testing in the past would cause JPMS break its promise that it has "never" tested on animals and it has been "cruelty-free since 1980," JPMS's conduct in China from 2001 to 2010 could alone prove Plaintiffs' case.

JPMS seems to be claiming irrelevance to avoid producing unfavorable discovery, as the emails JPMS has produced to date specifically reference earlier registrations and animal testing in China. In one email, Brenda DuVal, JPMS's Senior Vice President/Research and Development, voices a concern that JPMS is "still relying on animal testing to register these products." Kras Decl., Ex. 10. In another, she discusses how a "previous formula was animal tested as well." *Id.*, Ex. 11. Luke Jacobellis, JPMS's President, similarly stated: "We are being accused of not being truthful or we have fallen back on the original approvals that were done with animal testing." *Id.*, Ex. 12. The limited discovery JPMS provided reveals that it had previously registered products in China using animal testing. This is inconsistent with JPMS's statements at the Motion to Dismiss hearing. When asked what JPMS was doing during this time to import products in China, JPMS claimed there was "no enforcement" of animal testing, contradicting these emails. *Id.*, Ex. 13.

JPMS claims that its pre-2011 conduct is irrelevant because it predates the proposed class period and the FAC centers on whether JPMS Beijing obtained an exemption from animal testing in 2015. Both arguments fail. As already shown, JPMS's promises specifically encompass past conduct: "Cruelty-Free Since 1980" and "Never Have. Never Will." If JPMS animal tested in the past, its representations were false during the proposed class period. Additionally, Plaintiffs— some of whom purchased products between 2001 and 2010 (ECF No. 28 ¶¶ 223, 234, 266)—can still move to amend the complaint to expand the class period after they receive phase one discovery. While Plaintiffs proposed a conservative class period, Plaintiffs may move for a longer class period given the Court's finding that the delayed discovery rule applied and any animal testing by JPMS would breach JPMS's cruelty-free promises. ECF No. 51 at 4. Plaintiffs have not moved for class certification, class discovery has not started in earnest, and no class period has been approved by the Court. JPMS's other argument—that the FAC only centers on post-2014 conduct and JPMS's exemption—is not supported by the FAC. Plaintiffs specifically identify

JPMS's conduct in China, including NMPA registrations, dating back to 2001. ECF No. 28 ¶¶ 153–156. And neither the class allegations nor the causes of action reference or rely on JPMS's post-2014 conduct. *Id.* ¶¶ 298, 303–348. JPMS also claimed that the discovery should not be allowed because it did not have a subsidiary in China during that time. That JPMS's registrations were done through an agent has no bearing on relevance. Any actions JPMS's agents took in China are attributable to JPMS. *Salyers v. Metro. Life Ins. Co.*, 871 F.3d 934, 939 (9th Cir. 2017).

  JPMS has failed to show that the requested discovery is not proportional to the needs of the case or unduly burdensome. The Rule 26(b)(1) factors on proportionality—the importance of the issues at stake, the amount in controversy, the parties' relative access to the information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden outweighs the benefit—establish that JPMS must be compelled to produce documents and answer discovery pre-2011. Here, the issue at stake is whether JPMS misrepresented to millions of consumers that it never animal tested for twenty years when it was routinely testing on animals to sell in China. The amount in controversy is likely millions of dollars. The requested information is in JPMS's possession. JPMS knows whether it registered products in China, what it did to obtain those registrations, and must have the documents that would permit importation of its products to China. Plaintiffs should not be required to try and get the information directly from a Chinese agency (if even possible) when the information is in JPMS's possession, custody, or control. JPMS has the resources to produce discovery for the requested period. JPMS is an international company with yearly revenues totaling hundreds of millions of dollars, whereas Plaintiffs are individual consumers. ECF No. 28 ¶¶ 10–15, 46. As shown above, the requested discovery is not only relevant to Plaintiffs' claims, it is the single most important issue in the case. If this highly relevant discovery about animal testing is not proportional to the needs of the case, Plaintiffs could never show proportionality for any request, frustrating the broad scope of discovery.

  The only remaining factor—whether the burden outweighs the benefit—does not preclude the discovery. "[T]he party opposing discovery bears the burden of showing that discovery should not be allowed, and of clarifying, explaining, and supporting its objections with competent evidence." *Lofton v. Verizon Wireless (VAW) LLC*, 308 F.R.D. 276, 281 (N.D. Cal. 2015). JPMS

has not attempted to show that producing discovery back to 2001 would be burdensome. On the responses to the NUIs and RFAs, JPMS has not established any burden. For example, Plaintiffs provided copies of the NMPA registrations and provided the NMPA registration numbers to JPMS, yet JPMS claims it is burdensome to admit whether it obtained such registrations. Kras Decl., Ex. 5 at RFA 1. Similarly, it refused to admit or answer a NUI about whether JPMS engaged in animal testing to obtain those registrations, even though it has produced emails that reference such earlier animal testing. *Id.*, Ex. 5 at RFA 2, Ex. 6 at NUI 2, Exs. 10–12. And JPMS refuses to admit whether certain entities acted as its agent or distributor in China. *Id.*, Ex. 5 at RFAs 4–8. In response to the document requests, JPMS has not identified the cost or time required to produce such documents. *Id.*, Exs. 4, 8. The requests themselves are not excessive, focusing on JPMS's NMPA applications, toxicology reports, registrations, and communications about such applications and registrations—notably the applications and toxicology reports would only be a couple of hundred documents for the 62 registrations between 2001 and 2010 (all of which should be stored in the same location by JPMS). *Id.*, Ex. 1 at Requests 1–6. JPMS also refused Plaintiffs' offer to meet and confer about whether a shorter time frame would be appropriate for some of the document requests. *Id.*, Exs. 7–9. Plaintiffs cannot assess burden without JPMS sharing whether the documents exist, where they are stored, what custodians might have the documents, how JPMS can identify and retrieve such documents, and whether the existing searches can be extended to a longer period. JPMS has refused to provide that information, despite multiple offers from Plaintiffs to work with JPMS to resolve its claim that the discovery is burdensome. And JPMS's claim that it did not have a subsidiary in China before 2014 also does not establish burden. JPMS has a duty to collect documents from its agents. *See Soto*, 162 F.R.D. at 619 (party has control over documents "if that party has a legal right to the document"); *see also Hill v. Eddie Bauer*, 242 F.R.D. 556, 560 (C.D. Cal. 2007) (a party has "an affirmative duty to seek that information reasonably available to it from its employees, agents, or others subject to its control.") (cleanup up, citation omitted). JPMS also has not identified whether those documents are in its possession or what efforts it has taken or would need to take to preserve and collect those documents from its agents. Its bare claim of burden is insufficient. JPMS should be compelled to produce the requested discovery.

| | |
|---|---|
| DATED: February 16, 2024 | HAGENS BERMAN SOBOL SHAPIRO LLP |

By */s/ Michella A. Kras*
    Michella A. Kras (*Pro Hac Vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
11 West Jefferson, Suite 1000
Phoenix, Arizona 85003
Telephone: (602) 840-5900
Facsimile: (602) 840-3012
Email: michellak@hbsslaw.com

Robert B. Carey (*Pro Hac Vice*)
Leonard W. Aragon (*Pro Hac Vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
11 West Jefferson, Suite 1000
Phoenix, Arizona 85003
Telephone: (602) 840-5900
Facsimile: (602) 840-3012
Email: rob@hbsslaw.com
       leonarda@hbsslaw.com

Shana E. Scarlett (SBN 217895)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 300
Berkeley, California 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
Email: shanas@hbsslaw.com

*Attorneys for Plaintiffs*