Shana E. Scarlett (SBN 217895)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 300
Berkeley, California 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
Email: shanas@hbsslaw.com

Robert B. Carey (*Pro Hac Vice*)
Leonard W. Aragon (*Pro Hac Vice*)
Michella A. Kras (*Pro Hac Vice*)
E. Tory Beardsley (*Pro Hac Vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
11 West Jefferson, Suite 1000
Phoenix, Arizona 85003
Telephone: (602) 840-5900
Facsimile: (602) 840-3012
Email: rob@hbsslaw.com
        leonarda@hbsslaw.com
        michellak@hbsslaw.com
        toryb@hbsslaw.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| RANDALL HEAGNEY, RICA GUERRERO, KERRIE GONNELLA, JOHN ROHLOFF, and JEWEL RULE, individually and on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>JOHN PAUL MITCHELL SYSTEMS,<br><br>Defendant. | CASE NO. 3:23-cv-00687-VC<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**<br><br>[PUBLIC - REDACTED]<br><br>Hrg. Date:   May 15, 2025<br>Hrg. Time:   10:00 a.m.<br>Location:    Courtroom 4 – 17th Floor<br>Judge:       Hon. Vince Chhabria |

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ....................................................................................................1

II.     ARGUMENT ..........................................................................................................1

      A.      Plaintiffs have met the predominance requirements of Rule 23(b). .......................1

             1.      JPMS's cruelty-free representations found on every package establishes classwide exposure to a uniform misrepresentation. ...................................3

             2.      There is common proof to show the statements were material to consumers. ...............................................................................................5

             3.      Class members' understanding of the labels do not vary "wildly." ............7

             4.      JPMS engaged in a decades-long cruelty-free campaign. .........................10

      B.      Plaintiffs' damages models match their theory of liability....................................11

             1.      Dr. Macartney's hedonic regression will measure the price premium attributable to JPMS's cruelty-free representation. ...................................11

             2.      Dr. Macartney's proposed conjoint measures the price premium attributable to JPMS's cruelty-free representations....................................12

      C.      A choice-of-law analysis does not defeat certification. ........................................12

             1.      The Court can certify two breach of warranty classes.............................13

             2.      JPMS has not shown a conflict among jurisdictions. ...............................14

      D.      A class action is both superior and manageable. ..................................................14

      E.      Class counsel are adequate....................................................................................15

III.    CONCLUSION......................................................................................................15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re 5-Hour Energy Mktg. & Sales Pracs. Litig.*,
   No. ML132438PSGPLAX, 2017 WL 2559615 (C.D. Cal. June 7, 2017)................................6

*Algarin v. Maybelline, LLC*,
   300 F.R.D. 444 (S.D. Cal. 2014) .........................................................................................6, 7

*Astiana v. Kashi Co.*,
   291 F.R.D. 493 (S.D. Cal. 2013) ..............................................................................................7

*Blackie v. Barrack*,
   524 F.2d 891 (9th Cir. 1975) ..................................................................................................14

*Bradach v. Pharmavite, LLC*,
   2016 WL 7647661 (C.D. Cal. July 6, 2016).............................................................................7

*Bradach v. Pharmavite, LLC*,
   735 F. App'x 251 (9th Cir. 2018) .............................................................................................7

*Bruton v. Gerber Prods. Co.*,
   No. 12-CV-02412-LHK, 2018 WL 1009257 (N.D. Cal. Feb. 13, 2018).................................11

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
   308 F.R.D. 606 (N.D. Cal. 2015).........................................................................................5, 11

*Chow v. Neutrogena Corp.*,
   No. CV 12-04624 R JCX, 2013 WL 5629777 (C.D. Cal. Jan. 22, 2013)................................6

*In re ConAgra Foods, Inc.*,
   90 F. Supp. 3d 919 (C.D. Cal. 2015) ......................................................................................12

*Conde v. Sensa*,
   No. 14-CV-51 JLS (WVG), 2019 WL 4277414 (S.D. Cal. Sept. 10, 2019) ...........................7

*Corbett v. PharmaCare U.S., Inc.*,
   No. 21CV137-JES (AHG), 2024 WL 1356220 (S.D. Cal. Mar. 29, 2024)............................12

*DZ Rsrv. v. Meta Platforms, Inc.*,
   96 F.4th 1223 (9th Cir. 2024) ...................................................................................................4

*Ehret v. Uber Techs., Inc.*,
   148 F. Supp. 3d 884 (N.D. Cal. 2015) ......................................................................................3

*Fagen v. Neutrogena Corp.*,
   No. 5:13-CV-01316-SVW-OP, 2017 WL 11418358 (C.D. Cal. Oct. 24, 2017)................7, 11

*In re First All. Mortg. Co.*,
  471 F.3d 977 (9th Cir. 2006) ...........................................................................4

*Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*,
  326 F.R.D. 592 (N.D. Cal. 2018) ....................................................................6

*Guzman v. Polaris Indus., Inc.*,
  345 F.R.D. 174 (C.D. Cal. 2023) ...................................................................13

*Hadley v. Kellogg Sales Co.*,
  324 F. Supp. 3d 1084 (N.D. Cal. 2018) ..................................................6, 9, 10

*In re High-Tech Emp. Antitrust Litig.*,
  985 F. Supp. 2d 1167 (N.D. Cal. 2013) .........................................................14

*Jones v. ConAgra Foods, Inc.*,
  No. C 12-01633 CRB, 2014 WL 2702726 (N.D. Cal. June 13, 2014) ................6, 8

*Kaur v. Things Remembered, Inc.*,
  No. 14-CV-05544-VC, 2016 WL 11811049 (N.D. Cal. Apr. 20, 2016) ................15

*Krommenhock v. Post Foods, LLC*,
  334 F.R.D. 552 (N.D. Cal. 2020) ......................................................... *passim*

*Krueger v. Wyeth, Inc.*,
  310 F.R.D. 468 (S.D. Cal. 2015) .....................................................................4

*Leyva v. Medline Indus. Inc.*,
  716 F.3d 510 (9th Cir. 2013) .........................................................................15

*McGinity v. Procter & Gamble Co.*,
  69 F.4th 1093 (9th Cir. 2023) ........................................................................10

*Milan v. Clif Bar & Co.*,
  340 F.R.D. 591 (N.D. Cal. 2021) .....................................................................6

*Mullins v. Premier Nutrition Corp.*,
  No. 13-CV-01271-RS, 2016 WL 1535057 (N.D. Cal. Apr. 15, 2016) ...............5, 6

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
  31 F.4th 651 (9th Cir. 2022) ...........................................................................2

*In re Pharm. Indus. Average Wholesale Price Litigation*,
  582 F.3d 156 (1st Cir. 2009) .........................................................................14

*Prescott v. Reckitt Benckiser LLC*,
  No. 20-CV-02101-BLF, 2022 WL 3018145 (N.D. Cal. July 29, 2022) ................9

*Reitman v. Champion Petfoods USA, Inc.*,
  No. CV181736DOCJPRX, 2019 WL 7169792 (C.D. Cal. Oct. 30, 2019) ...............7

*Stewart v. Electrolux Home Prods., Inc.*,
No. 117CV01213LJOSKO, 2018 WL 1784273 (E.D. Cal. Apr. 13, 2018) ............................4

*In re Telescopes Antitrust Litig.*,
No. 5:20-CV-03642-EJD, 2025 WL 754263 (N.D. Cal. Mar. 10, 2025) ................................12

*In re Tobacco II Cases*,
207 P.3d 20 (Cal. 2009) ......................................................................................................10

*Townsend v. Monster Beverage Corp.*,
303 F. Supp. 3d 1010 (C.D. Cal. 2018) ..................................................................................6

*Tyson Foods, Inc. v. Bouaphakeo*,
577 U.S. 442 (2016) ..............................................................................................................2

*Urb. v. Tesla, Inc.*,
698 F. Supp. 3d 1124 (N.D. Cal. 2023) ...........................................................................12, 13

*Wolph v. Acer Am. Corp.*,
272 F.R.D. 477 (N.D. Cal. 2011) .......................................................................................3, 5

*Zakaria v. Gerber Products Co.*,
No. LACV1500200JAKEX, 2016 WL 6662723 (C.D. Cal. Mar. 23, 2016) ....................9, 10

**Statutes**

Cal. Civ. Code § 1834.9.5(c)(2) ..............................................................................................9

California Cruelty-Free Cosmetics Act ......................................................................................9

UCC ........................................................................................................................................13

**Other Authorities**

Rule 23 ....................................................................................................................................2

Rule 23(b) ................................................................................................................................1

Rule 23(b)(3) ............................................................................................................................1

## I.    INTRODUCTION

JPMS fundamentally misunderstands the Court's role in ruling on class certification. JPMS is asking the Court to weigh evidence, rather than determine whether there is common evidence from which a jury could find in favor of Plaintiffs. To show JPMS breached its cruelty-free promises, Plaintiffs have submitted common evidence that JPMS performed animal testing in China. Plaintiffs did not "smear" JPMS as a "bad actor," though Plaintiffs' evidence (mainly JPMS documents) does make JPMS look bad, but that is irrelevant. All that matters is, that evidence would permit a jury to find animal testing occurred. To escape this, JPMS attempts to rewrite its own story, claiming that its representations about being cruelty free were not uniform, not known to the public, not visible on its packaging, and not material to consumers. Not only do these arguments ignore JPMS's repeated insistence—to this Court and in this litigation—that not testing on animals is JPMS's core principle (Dkt. 121 at 3; Dkt. 121-3 at 101), they ignore evidence to the contrary and inappropriately ask the Court to decide factual issues. That JPMS manufactured a defense to Plaintiffs' claims does not defeat predominance. Plaintiffs have met the requirements of Rule 23(b)(3), including predominance, superiority, and manageability. Plaintiffs' damages methodology satisfies *Comcast* and proposed Class counsel are adequate. The only question the Court must decide is what Class or Subclasses to certify.

## II.    ARGUMENT

### A.    Plaintiffs have met the predominance requirements of Rule 23(b).

JPMS attempts to create a predominance issue by speculating about issues or raising merits disputes. That is insufficient. Plaintiffs presented *evidence* that JPMS made a uniform and material representation to all Class members—including on every JPMS package—waged a forty-year advertising campaign, used the terms "cruelty free" and "no animal testing" interchangeably, recognized the industry usage of the term "cruelty free," and relied on internal marketing and consumer surveys showing that consumers valued cruelty-free products, as well as the testimony of Luke Jacobellis (JPMS's president for over twenty years) confirming that "cruelty free" means no animal testing, which is a core tenet of JPMS's brand. Dkt. 121 at 2–3.

Plaintiffs presented evidence that JPMS breached its promises by registering over 120 products in China, each of which required animal testing, including Chinese regulations requiring animal testing, copies of the registrations, emails confirming animal testing was required, a cooperation agreement allowing animal testing, budgets for animals, evidence of comparative testing, lack of MatTek tissues for alternative testing, and an actual application and testing report from China. Dkt. 121 at 3–9. As the Supreme Court explained, a common question exists where "the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (quotation omitted).

Moreover, JPMS misses that certification "is limited to resolving whether the evidence establishes that a common question is capable of class-wide resolution, not whether the evidence in fact establishes that plaintiffs would win at trial." *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 667 (9th Cir. 2022). Despite this, JPMS identifies evidence that it believes Plaintiffs misrepresented. But all JPMS raises are its own interpretations of common evidence, while ignoring that Plaintiffs' evidence—taken as presented—can establish the Rule 23 requirements through common, classwide proof:

- JPMS disputes that Jacobellis admitted JPMS products were animal tested in China before 2011. Dkt. 131 at 2. But Jacobellis testified that in 2010 JPMS's distributor informed him "the Chinese government was testing on animals as part of their registration process." Dkt. 121-2, Ex. 8 at 37:20–38:5. This is common evidence that JPMS's 62 pre-2011 registrations in China were tested on animals.

- JPMS argues that Jacobellis's testimony about the meaning of cruelty free is merely his own individual understanding. Dkt. 131 at 13 n.13. That the president of JPMS equated the terms cruelty free with no animal testing is common evidence that JPMS uses them interchangeably.

- JPMS disputes Plaintiffs' interpretation of the BIDC Cooperation Agreement, claiming it only agreed to alternative testing, Dkt. 132 at 3, but ignores the provision stating BIDC would do "toxicological tests," which is common evidence supporting Plaintiffs' claims. Dkt. 121 at 6.

- JPMS disputes Class counsel's calculations related to the MatTek tissue. Dkt. 131 at 3. But the calculations supported by MatTek testimony, which JPMS does not dispute, are common evidence that JPMS did not perform alternative testing, particularly when no tissue was purchased after 2019.

- JPMS argues that maybe animal testing was not required for its post-2019 registrations. Dkt. 131 at 4 & n.4. But the regulations themselves state that animal testing is required. Dkt. 28 ¶¶ 128–39. Those regulations, along with the application and testing report that show animal testing occurred in 2019, are common evidence that animal testing occurred. Dkt. 121 at 6–7.

- JPMS claims that the budget to purchase animals may not have been approved. Dkt. 131 at 3. But that document shows that JPMS was at least budgeting for animals for specific cosmetic testing, which is common evidence that corroborates the registration documents that animal testing occurred.

- JPMS claims one of Jacobellis's emails does not show he suspected animal testing occurred. Dkt. 131 at 3. But JPMS ignores that the multitude of emails, taken together, are common evidence to show JPMS's executives had concerns and knew or should have known animal testing occurred. Dkt. 121 at 8.

JPMS's musings are inadmissible previews of its defenses. Plaintiffs have common evidence to support their claims, which must be accepted, and the jury will resolve disputes over its weight.

JPMS fares no better on its claim of individualized issues. JPMS argues there is no classwide exposure to its representations, its representations are not identical, its representations are not material, its representations mean different things to different class members, and its labels were not prominent enough to create a warranty. In making these arguments, JPMS once again ignores common evidence to the contrary. In short, JPMS's rambling arguments about individualized issues predominating over common ones are meritless.

### 1. JPMS's cruelty-free representations found on every package establishes classwide exposure to a uniform misrepresentation.

JPMS disingenuously argues that there was not classwide exposure to its representations, while admitting that these representations appeared on all its bottles. The case law is clear that when the representation is on the packaging, classwide exposure to the representation is established. *Ehret v. Uber Techs., Inc.*, 148 F. Supp. 3d 884, 895 (N.D. Cal. 2015); *Wolph v. Acer Am. Corp.*, 272 F.R.D. 477, 488 (N.D. Cal. 2011). To circumvent this, JPMS argues that the representations on the packages were not identical or sufficiently cohesive. Three representations have appeared on JPMS's labels: "A Pioneer in Cruelty-Free Hair Care," "No Animal Testing," and "John Paul Mitchell Systems does not conduct or endorse animal testing." JPMS identifies no discernible differences between its no animal testing representations, instead claiming "a pioneer in cruelty-free hair care" means something materially different than "no animal testing."

But "cruelty free" is understood to mean the same thing: no animal testing. JPMS is trying to "create the illusion of variation in a claimed misrepresentation by mischaracterizing the nature of the misrepresentation." *DZ Rsrv. v. Meta Platforms, Inc.*, 96 F.4th 1223, 1235 (9th Cir. 2024).

The Court has ample evidence showing the term "cruelty free" means no animal testing, making the representation sufficiently cohesive. Plaintiffs' evidence: JPMS used the terms interchangeably; its president testified they meant the same thing; its own expert found that 58% of respondents exposed to JPMS's cruelty-free advertising and 61% of respondents exposed to JPMS's no animal testing advertising agree the company should not test on live animals; and the terms are used interchangeably in the industry to the selling public. Dkt. 121 at 2 & n.2. Predominance only requires that the class was exposed to a similar representation. *See DZ Rsrv.*, 96 F.4th at 1234 ("Class action fraud claims often involve similar misrepresentations."); *Krueger v. Wyeth, Inc.*, 310 F.R.D. 468, 479 (S.D. Cal. 2015) ("the allegedly false and deceptive packaging and marketing of the [product] need not be absolutely uniform" (citation omitted)). "The class action mechanism would be impotent if a defendant could escape much of his potential liability for fraud by simply altering the wording or format of his misrepresentations across the class of victims." *In re First All. Mortg. Co.*, 471 F.3d 977, 992 (9th Cir. 2006).

In a failed attempt to sow doubt, JPMS claims there is not sufficient "cohesion" among the representations, and the labels changed over time, there can be no predominance. JPMS cites *Stewart v. Electrolux Home Prods., Inc.*, No. 117CV01213LJOSKO, 2018 WL 1784273, at *5 (E.D. Cal. Apr. 13, 2018), but there the court found that the plaintiffs never alleged they saw any of the *multiple misrepresentations* about the self-cleaning feature on the oven. *Id.* at *1, *5 (quoting four different representations regarding the self-cleaning feature). Similarly, here, all of JPMS's representations are related to no testing on animals. For JPMS to prevail, there would need to be a material variation among the representations to create a predominance issue. *DZ Rsrv.*, 96 F.4th at 1234 (9th Cir. 2024). There is not. As JPMS's own expert found, 58% of consumers he surveyed found that "cruelty free" meant no testing on live animals, while 61% found "no animal testing" meant no testing on live animals. And Plaintiffs allege that JPMS breached its cruelty-free promise by testing on live animals. Additionally, JPMS engaged in a

decades-long campaign of promoting itself as never testing on animals and being a pioneer in cruelty-free products, using those terms interchangeably, as described in Section II.A.5.

**2.    There is common proof to show the statements were material to consumers.**

JPMS's arguments about materiality improperly ask the Court to accept Dr. Hanssen's survey and ignore all other evidence that the cruelty-free representations were material to consumers. "Materiality of the misrepresentation is an objective standard that is susceptible to common proof." *Wolph*, 272 F.R.D at 488. "Further, a statement need not be 'the sole or even the predominant or decisive factor influencing' the class members' decisions to buy the challenged products." *Krommenhock v. Post Foods, LLC*, 334 F.R.D. 552, 580 (N.D. Cal. 2020) (quoting *In re Tobacco II Cases*, 207 P.3d 20 (Cal. 2009)). Here, Plaintiffs presented common proof that the cruelty-free representation was material to consumers, including JPMS's own internal surveys showing ███████████████████████████████████████████████ ██████, marketing materials, and how well JPMS's cruelty-free social media posts performed., Dkt. 121 at 19–20; Dkt. 123-6 at 177475–76. And Plaintiffs' expert, Dr. Macartney, cited multiple studies showing that a cruelty-free representation is material to consumers. Dkt. 121 at 20. JPMS also put the representation on every package, creating an inference of materiality. *See Wolph*, 272 F.R.D. at 488 ("The statements made on the packaging and labels present common proof on the issues of materiality and falsity.").

Despite this, JPMS asks the court to accept Dr. Hanssens' testimony as determinative, ignoring that courts are "not tasked with resolving conflicts between opposing experts when evaluating predominance." *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 308 F.R.D. 606, 629 (N.D. Cal. 2015). This is improper. Dr. Hanssens' survey is at best conflicting, albeit weak, evidence the jury can consider. Dr. Hanssens conducted an open question survey to determine consumers' predominant factors in purchasing hair-care products. As the representation does not need to be the predominant or decisive factor, *Krommenhock*, 334 F.R.D. at 580, the survey does not test materiality. But even if it did, the jury will still determine whether the representations were material to a reasonable consumer. *See Mullins v. Premier Nutrition Corp.*, No. 13-CV-

01271-RS, 2016 WL 1535057, at *6 (N.D. Cal. Apr. 15, 2016) (defendant's argument that survey show materiality varies among consumers does not create a predominance issue as defendant "is free to offer a different interpretation of that question, but the question of materiality remains a common one"). As there is common evidence from which a jury could find it is material to consumers, there is no predominance issue.

JPMS's claim that Plaintiffs are required to conduct their own survey is flawed. Courts have consistently held that where the defendant's internal documents show that its consumers found the claim material, materiality is established for class certification. *E.g.*, *Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*, 326 F.R.D. 592, 614 (N.D. Cal. 2018) (finding materiality where defendant's internal documents show importance of representations to consumers and citing cases); *Milan v. Clif Bar & Co.*, 340 F.R.D. 591, 599 (N.D. Cal. 2021) (same). And California "has expressly rejected the 'view that a plaintiff must produce a consumer survey or similar extrinsic evidence to prevail on a claim that the public is likely to be misled by a representation.'" *Mullins*, 2016 WL 1535057, at *5 (citation omitted); *Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084, 1115 (N.D. Cal. 2018) (same). JPMS's "own marketing research and surveys" are sufficient to establish materiality.[1] *Mullins*, 2016 WL 1535057, at *5.

JPMS's cited cases about repeat customers are similarly unavailing. In *Chow v. Neutrogena Corp.*, No. CV 12-04624 R JCX, 2013 WL 5629777, at *2 (C.D. Cal. Jan. 22, 2013), the misrepresentation related to how the product worked. *Id.* Because it may have worked as advertised for some customers, there could not be an inference of classwide reliance or materiality. *Id.* Similarly, in *Algarin v. Maybelline, LLC*, 300 F.R.D. 444, 454 (S.D. Cal. 2014), the representation related to how the product functioned and there was no evidence the

---

[1] JPMS's cited cases are inapposite because those plaintiffs failed to show any common evidence of materiality. *See In re 5-Hour Energy Mktg. & Sales Pracs. Litig.*, No. ML132438PSGPLAX, 2017 WL 2559615, at *7 (C.D. Cal. June 7, 2017) (plaintiffs failed to present any common proof that consumers believed 5-Hour Energy "would provide them with five hours of caloric energy"); *Jones v. ConAgra Foods, Inc.*, No. C 12-01633 CRB, 2014 WL 2702726, at *15–16 (N.D. Cal. June 13, 2014) (no evidence of materiality other than own expert's unsubstantiated opinions); *Townsend v. Monster Beverage Corp.*, 303 F. Supp. 3d 1010, 1045 (C.D. Cal. 2018) (same).

representation at issue was material to the class. *Id.* Here, the representation does not relate to how the product functions, nor would a repeat customer be aware of the representation's falsity.

### 3.    Class members' understanding of the labels do not vary "wildly."

JPMS's arguments about what Class members understood both misstates the law and is pure speculation, as JPMS does not come forward with any evidence or individual consumers who do not know cruelty free means no animal testing. The "truthfulness and potential impact on the materiality of the [representations] are questions to be resolved by the jury under the reasonable consumer standard." *Krommenhock*, 334 F.R.D. at 566. JPMS's single cited case to the contrary misstates the law. In *Fagan*, the court quoted *Bradach*, in finding: "If individualized questions exist regarding how consumers interpret [a challenged claim], then whether a consumer considered the statement material" is "an individualized inquiry." *Fagen v. Neutrogena Corp.*, No. 5:13-CV-01316-SVW-OP, 2017 WL 11418358, at *2 (C.D. Cal. Oct. 24, 2017) (quoting *Bradach v. Pharmavite, LLC*, 2016 WL 7647661, at *6 (C.D. Cal. July 6, 2016)). But *Bradach* was reversed by the Ninth Circuit, finding the "district court's conclusion that it would need to inquire into the motives of each individual class member was premised on an error of law." *Bradach v. Pharmavite, LLC*, 735 F. App'x 251, 255 (9th Cir. 2018). Additionally, in *Fagan*, the representations were different—one said 100% naturally sourced, which could refer to all the ingredients and the other said 100% naturally sourced sunscreen ingredients, which referred only to the sunscreen component of the product—something the plaintiffs agreed with. *Fagan*, 2017 WL 11418358, at *2; *see also Conde v. Sensa*, No. 14-CV-51 JLS (WVG), 2019 WL 4277414, at *8 (S.D. Cal. Sept. 10, 2019) (making varying promises about losing different amounts of weight in different periods of time). Other cases JPMS cites to show Class members had a different understanding are similarly unavailing. In *Reitman v. Champion Petfoods USA, Inc.*, No. CV181736DOCJPRX, 2019 WL 7169792, at *10 (C.D. Cal. Oct. 30, 2019), there were additional statements on the packages that provided the class members with context about whether the statement was true. And in *Astiana v. Kashi Co.*, 291 F.R.D. 493, 500 (S.D. Cal. 2013), the plaintiffs failed "to sufficiently show that 'All Natural' has any kind of uniform

definition among class members." *See also Jones v. ConAgra Foods, Inc.*, No. C 12-01633 CRB, 2014 WL 2702726, at *14 (N.D. Cal. June 13, 2014) (same).

Just because consumers might attach additional meanings to the term cruelty-free (as JPMS speculates) it does not show that they do not also believe it means no animal testing, which is all that matters here. JPMS's attempt to show that Class members understand JPMS's cruelty-free representations to mean 143 different things falls flat. JPMS isolates certain statements of Plaintiffs' depositions, ignoring their full testimony. Each one testified that "cruelty free" meant no animal testing. Plaintiff Jewel Rule testified that cruelty free meant "you don't use animals or people for any kind of testing." Declaration of Michella Kras ("Kras Decl."), Ex. 1, at 151:1–152:5. Plaintiff John Rohloff testified that he saw both labels and that cruelty free means "means that it hasn't been tested on animals and that it currently isn't tested on animals." Kras Decl., Ex. 2, at 69:15-70:13; 72:19–25. Plaintiff Heagney explained that if something was not cruelty free it means that "manufacturers would test on animals and rabbits." Kras Decl., Ex. 3, at 40:16–25. He also explained that if a company said it was cruelty free and was selling worldwide it could not "start testing on animals to sell the product in that country." *Id*. 41:1–42:4. Kerrie Gonella testified throughout her deposition that she equated cruelty free to no animal testing. Kras Decl., Ex. 4, at 33:25–34:5, 83:2–84:24. Rica Guerrero also testified that she equated the terms, testifying that "[a] pioneer in cruelty-free hair care" meant that "none of their product is tested on animals." Kras Decl., Ex. 5, at 57:8-58:6.

JPMS's next argues Class members could understand "no animal testing" to mean no animal testing in the United States or unless required by law is similarly unavailing. JPMS did not disclose to consumers that it was only cruelty free in the U.S. or that it tested on animals to sell in China. Quite the opposite. It represented it was not testing in China and was PETA certified, meaning it did not test anywhere in the world. Dkt. 28 ¶¶ 52–53, 194. JPMS tries to use Dr. Hanssens' survey to show that disclosing the truth would not have made a difference in consumer purchases. But the materiality of the statements is not only a merits issue but also an issue of fact for the jury. *See Krommenhock*, 334 F.R.D. at 565–66 ("Post's experts Hanssens and Van Liere dispute Silverman's materiality conclusions, but those are issues to be ultimately

resolved by the jury."). Besides, Dr. Hanssens survey does not show how consumers interpret the two labels, only whether a person was likely to purchase the product. His survey also does not disclose that JPMS was not required to sell in China. Each Plaintiff testified that they cared whether JPMS tested on animals anywhere in the world. Kras Decl., Ex. 1, at 112:7–15, 115:11–116:14 , 116:17–117:10; Kras Decl., Ex. 2, at 112:19–113:14, 113:15–114:20, 126:20–127:6; Kras Decl., Ex. 3, at 41:9–17; Kras Decl., Ex. 4, at 28:10–23, 89:6–21, 149:20–150:3; Kras Decl., Ex. 5, at 20:16–21:5, 74:9–16.

JPMS's speculation about the "California Cruelty-Free Cosmetics Act" is also unavailing. The statute merely regulates what cosmetics can be sold in California, providing an exemption if the product was tested on animals to comply with foreign law. Cal. Civ. Code § 1834.9.5(c)(2). It does not regulate the meanings of labels on products. Indeed, the fact that JPMS lobbied California ***not*** to include the foreign law exemption is common evidence demonstrating that JPMS does not believe a cosmetics company can say it is cruelty free if it is testing its products to sell in a foreign country. Dkt. 28 ¶¶ 110–112; Kras Decl., Ex. 6. JPMS's arguments about the prominence of the representations fail.

Despite JPMS's argument to the contrary, there is no requirement that the representations be sufficiently prominent. JPMS relies on two cases that are inapposite and have been criticized as not following California law. In *Krommenhock*, Judge Orrick criticized that portion of *Hadley*, 324 F. Supp. 3d at 1095, which found that the representations were not sufficiently prominent, relying on *Zakaria v. Gerber Products Co.*, No. LACV1500200JAKEX, 2016 WL 6662723, at *9 (C.D. Cal. Mar. 23, 2016). *Krommenhock*, 334 F.R.D. at 564. Declining to follow *Hadley* and find the representations were not sufficiently prominent, the court held: "Where, as here, there is evidence that the representation was consistently made on a product's label, the only question is whether it was objectively material to a reasonable consumer." *Krommenhock*, 334 F.R.D. at 565; *see also Prescott v. Reckitt Benckiser LLC*, No. 20-CV-02101-BLF, 2022 WL 3018145, at *5 (N.D. Cal. July 29, 2022) ("prominence requirement is not supported by California law").

In any event, the representations made in this case are factually distinguishable from the ones made in *Hadley* or *Zakaria*. In *Hadley*, the representation "only appeared (1) on the back

panel of the Nutri-Grain packaging; (2) 'in small font'; and (3) in the middle of a block of text." *Hadley*, 324 F. Supp. 3d at 1100. And in *Zakaria*, the "information was accompanied by other information, in small font, and sometimes located on the back or inside cover." *Zakaria*, 2016 WL 6662723, at *8. The representations here were standalone statements, mostly accompanied by a logo, and not buried in block text but separated from any such text. Dkt. 28 ¶ 73. That the representations were on the back of the package does not save JPMS. JPMS distorts *McGinity v. Procter & Gamble Co.*, 69 F.4th 1093, 1098 (9th Cir. 2023), which discusses whether a statement on the back of a package can cure a misstatement on the front. *Id.* at 1097–98.

> **4.    JPMS engaged in a decades-long cruelty-free campaign.**

JPMS claims that its advertising was insufficient to establish classwide exposure. The Court does not need to reach this issue because the representation appeared on every label. Even so, JPMS's argument fails. Where "a plaintiff alleges exposure to a long-term advertising campaign, the plaintiff is not required to plead with an unrealistic degree of specificity that the plaintiff relied on particular advertisements or statements." *In re Tobacco II Cases*, 207 P.3d at 40. Plaintiffs have made this showing. As outlined in the FAC, JPMS engaged in a decades-long massive advertising and brand-building program to establish itself as the first cosmetics company to not test on animals, which JPMS generally admits. Dkt. 28 ¶¶ 48–71; Dkt. 56 ¶¶ 48–71. While it would have been impossible for Plaintiffs to cite every advertisement or social media post, Plaintiffs presented evidence that JPMS specifically marketed its products as cruelty-free and that its consumers associated JPMS with that stance. Dkt. 121 at 2–3, 19–20. JPMS asks this Court to ignore this overwhelming evidence and instead credit its expert, who found that only 2– 6.66 percent of the social media posts during the Class period were related to JPMS's cruelty-free representations. Plaintiffs have developed extensive evidence comprising other advertisements, statements made on its own website, its marketing documents, internal surveys about brand recognition, and decades of establishing that brand recognition, and evidence that anyone who follows JPMS on social media would have seen its representation "CRUELTY-

FREE SINCE 1980." Dkt. 28 ¶¶ 63–64; Dkt. 56 ¶¶ 63–64. Plaintiffs have ample evidence to prove classwide exposure to JPMS's cruelty-free representations.

**B.    Plaintiffs' damages models match their theory of liability.**

**1.    Dr. Macartney's hedonic regression will measure the price premium attributable to JPMS's cruelty-free representation.**

JPMS does not cite anything to show that Dr. Macartney's hedonic regression cannot isolate the price premium associated with JPMS's cruelty-free representations. JPMS first cites *Fagan*, to show that a hedonic regression cannot isolate the misrepresentation here. But there, as discussed above, the representations were different, with one representation referring to all ingredients and the other to just the sunscreen ingredients. *Fagan*, 2017 WL 11418358, at *2. As such, the hedonic regression could not isolate the price premium where one of the representations was true. *Id.* JPMS also cites *Bruton v. Gerber Prods. Co.*, No. 12-CV-02412-LHK, 2018 WL 1009257, at *11 (N.D. Cal. Feb. 13, 2018). That case involved at "least five distinct statements spread across 344 labels" and "of the 69 products at issue, '66 had multiple label iterations with material variation—some labels contained the challenged statements, some did not, and some had only one or different statements in different locations than on other variations of the same product label.'" *Id.* at *10. Here every product made substantially the same representation. JPMS's citation to its experts does not help. *See In re Cathode Ray Tube (CRT) Antitrust Litig.*, 308 F.R.D. at 629 (courts do not resolve expert disputes in determining predominance). It cites Dr. Hanssens' report where he tests consumer perceptions about JPMS's "no animal testing" and "a pioneer in cruelty-free hair care" logos. Dkt. 130-4 ¶ 55. Though Dr. Hanssens opines there is heterogeneity among consumers, the results of his survey tell a different story. The majority of both groups (within 3%) agreed that it was unacceptable to test products on "skin, eyes, or other tissues of living animals" if the product had one of those logos. *Id.* ¶ 57. JPMS also cites Dr. Ugone's report, claiming Dr. Macartney has not explained how he will account for product variables and brand attributes. As discussed in Plaintiffs' opposition to exclude Dr. Macartney, Dr. Macartney explains how he will control for those variables. Dkt. 133 at 5. Speculation that the variables will be insufficient does not defeat class certification, as any

variables go to the weight, rather than the admissibility of the regression. *In re Telescopes Antitrust Litig.*, No. 5:20-CV-03642-EJD, 2025 WL 754263, at *13 (N.D. Cal. Mar. 10, 2025).

### 2.    Dr. Macartney's proposed conjoint measures the price premium attributable to JPMS's cruelty-free representations.

Each of JPMS's arguments about the proposed conjoint mirrors what JPMS argued in its motion to exclude. Because Plaintiffs have already addressed these arguments, they will only briefly touch on them here and incorporate by reference their opposition to that motion. First, JPMS's representations mean substantially the same thing, so Dr. Macartney can test the price premium for that representation. Dkt. 133 at 11–12. Additionally, as Dr. Macartney testified he will use JPMS's own representations, he can perform three conjoint surveys to verify they would have the same price premium. *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919. 930 (C.D. Cal. 2015) (acknowledging that expert can modify pricing models, and such flexibility is not a bar to certification). Second, Dr. Macartney sufficiently identified his methodology—including how he would design his conjoint—as described in Plaintiffs' opposition to JPMS's motion to exclude. Dkt. 133 at 9–11. Third, JPMS is incorrect that a single conjoint can only test a single product, as Plaintiffs have already shown. *Id.* at 12–13. Last, Dr. Macartney's conjoint accounts for supply-side factors. *Id.* at 13–15. That JPMS's experts say otherwise is unavailing. *See Corbett v. PharmaCare U.S., Inc.*, No. 21CV137-JES (AHG), 2024 WL 1356220, at *27 (S.D. Cal. Mar. 29, 2024) (dismissing Dr. Ugone's criticisms about supply-side factors); *Krommenhock*, 334 F.R.D. at 580–81 (rejecting Dr. Hanssens' criticisms about supply-side factors).

### C.    A choice-of-law analysis does not defeat certification.

Under California's choice-of-law rules, "[w]hether a nonresident plaintiff can assert a claim under California law is a constitutional question based on whether California has sufficiently significant contacts with the plaintiff's claims." *Urb. v. Tesla, Inc.*, 698 F. Supp. 3d 1124, 1132 (N.D. Cal. 2023) (citations omitted). Where a company is headquartered in California and "continues to conduct a significant portion of its business in the state," there are sufficient contacts in California. *Id.* Plaintiffs have demonstrated that JPMS has sufficient

contacts in California, which shifts the burden to JPMS as the "party seeking to apply non-California law to demonstrate that foreign law . . . should apply to the claims." *Id.*

> California courts apply a three-step governmental interest test that asks: (1) Whether the relevant law pertaining . . . of each affected jurisdiction is the same or different; (2) If there is a difference, whether there is a true conflict . . .; and (3) If there is a true conflict, whether the other state's interest would be more impaired if its policy were subordinated to California's.

*Id.* at 1132–33 (internal citations and quotations omitted). JPMS has not met its burden.

### 1. The Court can certify two breach of warranty classes.

In arguing that the Court cannot certify a nationwide class under the UCC, JPMS attaches a survey covering fifty states and District of Colombia, showing that some jurisdictions require reliance and/or privity. As reliance can be decided as a separate class, and privity is not an issue for JPMS's direct-to consumer sales, the Court can certify two subclasses.

First, the Court can certify a non-reliance subclass for the breach of express warranty claim. JPMS does not identify any conflict between California (Dkt. 131-8) or misstated the law on reliance, for a total of thirty-three jurisdictions. Kras Decl. ¶ 11 & Exs. 7, 8. Like California, none of those jurisdictions have a reliance requirement, a privity requirement, or the privity requirement does not apply because the representation is intended for end users. There are also five additional states that have a privity requirement, but no reliance requirement. Kras Decl. ¶ 12. The law in those states does not have a conflict for direct purchases. Because JPMS has failed to show an actual conflict or impairment of another state's interest, the Court should certify a non-reliance subclass of consumers for the breach of express warranty claim. *Id.* ¶ 13.

Second, the Court can certify a reliance subclass for the breach of express warranty claims. There are ten states that require reliance, but not privity, including states where Plaintiffs Rule, Rohloff, Guerrero, and Gonnella reside. *Id.* ¶ 14. And there are two additional states where the privity requirement would not create a conflict for direct purchasers. *Id.* ¶ 15. JPMS has conceded it has sufficient contacts in those states, arguing the law of each Class member's state should apply. And Plaintiffs have moved to certify a class under those states. Each of the Plaintiffs have alleged reliance, which is sufficient at the class certification stage. *Guzman v.*

*Polaris Indus., Inc.*, 345 F.R.D. 174, 185 (C.D. Cal. 2023). The Court should certify a reliance subclass of consumers for the breach of express warranty claim. Kras Decl. ¶ 16.

> **2.    JPMS has not shown a conflict among jurisdictions.**

Rather than show there is conflict among the states as required by the governmental interest test, JPMS argues that a nationwide class is inappropriate for Plaintiffs' UCL, FAL, and CLRA claims, based on other court rulings, where the defendant did make a showing that there was a conflict. JPMS makes no such showing. It generally claims the law is different but does not explain where or how. It also claims there is a conflict but again does not cite a single conflict. JPMS then jumps to other states having a superior interest, because of where the sale occurred, ignoring it did not meet the first two prongs of the test or addressing any of the other factors. Because JPMS has not met its burden, the Court should certify a nationwide class. In the alternative, the Court should certify a California class for the UCL, FAL, and CLRA claims.

**D.    A class action is both superior and manageable.**

In arguing that a class action is neither superior nor manageable, JPMS mainly rehashes the arguments it made about predominance. "[T]he difficulty of managing a class action, depends largely on whether Plaintiffs' case 'rises and falls [on] common evidence'." *In re High-Tech Emp. Antitrust Litig.*, 985 F. Supp. 2d 1167, 1228 (N.D. Cal. 2013) (citation omitted). As shown above, Plaintiffs case rises and falls on common evidence. JPMS's arguments—that the three representations on its bottles are too disparate to be common—fail. The jury will decide whether all of JPMS's representations as a whole were false. This includes the representations on the bottles, on its website and social media, and in advertising. They will all rise or fall together.

JPMS also argues that damages are too individualized. JPMS ignores that damages in a class case may be decided in the aggregate. "[T]he use of aggregate damages calculations is well established in federal court and implied by the very existence of the class action mechanism itself." *In re Pharm. Indus. Average Wholesale Price Litigation*, 582 F.3d 156, 197 (1st Cir. 2009); *see also Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975) ("The amount of damages is invariably an individual question and does not defeat class action treatment."). And at this

stage, individualized damages do not create manageability issues that would defeat certification. *See Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 515 (9th Cir. 2013) (error to find "manageability concerns on the need to individually calculate damages"). JPMS's arguments fall flat.

## E.    Class counsel are adequate.

Counsel has vigorously litigated this case and JPMS's claims to the contrary are insincere and have no bearing on adequacy. JPMS omits the significant work Class counsel have done in this case to prepare for class certification. The effort thus far includes issuing 97 discovery requests, reviewing over 50,000 documents, deposing two key JPMS employees, deposing a key third-party, answering and supplementing responses to the 135 discovery requests sent to Plaintiffs, preparing and presenting Plaintiffs for their depositions, prevailing on three separate discovery disputes before this Court, disclosing a class certification expert, and having Plaintiffs' expert sit for his deposition. Kras Decl. ¶ 17. Plaintiffs have prosecuted this case in a way that allowed them to timely move for class certification and discovery is not closed. Plainly, Plaintiffs' counsel's effort here is a far cry from *Kaur v. Things Remembered, Inc.*, No. 14-CV-05544-VC, 2016 WL 11811049, at *1 (N.D. Cal. Apr. 20, 2016). There, the attorneys moved to delay the class certification motion the day before the discovery cutoff and failed to take a single deposition before discovery cutoff. *Id.* They also "lost track" of one of their plaintiffs, failed to inform defendant she was unavailable until the day before her deposition, and moved to replace her simultaneously with class certification after discovery had closed. *Id.* Here Class counsel has worked hard, smart and diligently, and JPMS's comments are unwarranted.[2]

## III.    CONCLUSION

Plaintiffs respectfully ask the Court to certify the Class or Subclasses as outlined in the Motion for Class Certification and herein.

---

[2] For example, JPMS complains about how long it took Class counsel to respond to its 30(b)(6) objections, omitting its role of objecting to all forty-five topics. Kras Decl. ¶ 18. Relatedly, JPMS complains that Plaintiffs have not taken a marketing deposition, ignoring that it still has not identified its 30(b)(6) designee on topics agreed to over two months ago. *Id.* ¶ 19.

Dated: May 1, 2025                    Respectfully submitted,

                                      By */s/ Michella A. Kras*

                                      Robert B. Carey (*Pro Hac Vice*)
                                      Leonard W. Aragon (*Pro Hac Vice*)
                                      Michella A. Kras (*Pro Hac Vice*)
                                      E. Tory Beardsley (*Pro Hac Vice*)
                                      HAGENS BERMAN SOBOL SHAPIRO LLP
                                      11 West Jefferson, Suite 1000
                                      Phoenix, Arizona 85003
                                      Telephone: (602) 840-5900
                                      Facsimile: (602) 840-3012
                                      Email: rob@hbsslaw.com
                                              leonarda@hbsslaw.com
                                              michellak@hbsslaw.com
                                              toryb@hbsslaw.com

                                      Shana E. Scarlett (SBN 217895)
                                      HAGENS BERMAN SOBOL SHAPIRO LLP
                                      715 Hearst Avenue, Suite 300
                                      Berkeley, California 94710
                                      Telephone: (510) 725-3000
                                      Facsimile: (510) 725-3001
                                      Email: shanas@hbsslaw.com

                                      *Attorneys for Plaintiffs*